Edward SELZLER and Ruth Selzler, Plaintiffs-Respondents and Cross-Appellants,†

UNITED OF OMAHA INSURANCE COMPANY, Plaintiff-Respondent,

v.

DRESSER, OSCEOLA, GARFIELD FIRE DEPARTMENT, Defendant-Appellant and Cross-Respondent,

ALLSTATE INSURANCE COMPANY and Milwaukee Ins. Co., Defendants.

Court of Appeals

*No. 86–1765. Orally argued August 19, 1987.—Decided September 15, 1987.*

(Also reported in 415 N.W.2d 546.)

† Petition to review denied.

466

For the defendants-appellants and cross-respondents there were briefs and oral argument by *Joe Thrasher* of *Weisel, Thrasher, Doyle & Pelish, Ltd.,* of Rice Lake.

For the plaintiffs-respondents and cross-appellants there was a brief and oral argument by *Steven B. Goff* of *Bye, Krueger & Goff, S.C.,* of River Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Dresser, Osceola, Garfield Fire Department appeals a judgment permitting each plaintiff to recover up to $150,000 against the fire department. The fire department contends that the trial court misinterpreted sec. 893.80(3), Stats., by holding that the liability limitation applied to each governmental unit that had formed the fire department. We agree. Because the joint fire department is one governmental agency under sec. 893.80(3), and recovery for each plaintiff is therefore limited to $50,000, we reverse.

The Towns of Garfield and Osceola and the Village of Dresser formed the Dresser, Osceola, and

Garfield Rural Fire Association, a volunteer fire department, pursuant to sec. 60.29(18)(a), Stats.[1] The fire department is operated by a board consisting of the two town chairmen, the village president, and two members from each of the town boards and village trustees. The board supervises the fire department's financial matters, determines its financial needs, and may request the municipalities to levy up to one mill in taxes to finance the department's operation. In the event the tax levy exceeds one mill, the department must prepare a budget and present it to each of the municipalities for approval. If the majority of municipalities approve the budget, the levy is binding upon all three municipalities.

The fire department responded to a call involving a brush fire on land used by Edward Selzler and owned by his son. At the fire, the department cut down a burning tree. During the cutting process, a portion of the tree top broke off and hit Edward Selzler causing him extensive injuries.

Edward and Ruth Selzler sued the fire department for negligence. The jury found the fire department sixty percent causally negligent and Selzler forty percent causally negligent, and allocated damages.

In response to motions after verdict, the trial court applied sec. 893.80(3) to determine the governmental liability limitations. Section 893.80(3) provides in relevant part:

> The amount recoverable by any person for any damages, injuries, or death in any action founded

[1]This statute has been revised and renumbered to sec. 60.55, Stats., effective January 11, 1985.

on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in their course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000, except that the amount recoverable shall not exceed $25,000 in any such action against a volunteer fire company organized under ch. 213 or its officers, officials, agents or employes. If the volunteer fire company is part of a combined fire department, the $25,000 limit still applies to actions against the volunteer fire company or its officers, officials, agents or employes.

The trial court first determined that the Dresser, Osceola, Garfield Fire Department was not a volunteer fire company organized under ch. 213, Stats., and that the liability limits applying to such fire companies did not apply. The trial court then concluded that under sec. 893.80(3) the liability limitation applied to each governmental unit that had formed the fire department and thereby permitted each plaintiff to recover up to $150,000 from the fire department.

The dispositive issue on appeal is whether the joint fire department formed pursuant to ch. 60, Stats., is subjected to three times the municipal tort liability limitation of sec. 893.80(3) by virtue of the three municipalities creating it. This issue is one of statutory construction raising a question of law. *Bonn v. Haubrich,* 123 Wis. 2d 168, 171–72, 366 N.W.2d 503, 505 (Ct. App. 1985). Therefore, we owe no deference to the trial court's determination. *Id.*

Selzler argues that sec. 893.80(3) is ambiguous and that we should construe the phrase "governmental subdivision or agency thereof" as a liability

limitation for governmental subdivisions whose agents are guilty of negligence. He contends that the limitation established by the statute does not apply to the fire department, but rather to each governmental subdivision whose agents are found negligent under the respondeat superior doctrine. He argues that since the fire department is an agent of all three governmental units, there are three governmental unit limits of liability available to Edward and Ruth Selzler.

The threshold question when construing a statute is whether the statutory phrase is ambiguous. *See State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97, 99 (1977). When statutory language is plain and unambiguous, interpretation is unnecessary. *Id.* "Ambiguity" arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word or phrase in the statute. *West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 418–19, 342 N.W.2d 415, 420 (1984). Absent any statutory definition, the meaning of nontechnical words may be ascertained from a recognized dictionary. *State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984).

With the above principles in mind, we conclude that sec. 893.80(3) is ambiguous. This section could be interpreted to limit liability to $50,000 for joint fire departments created by multiple municipalities. Since the word "agency" is defined as "an administrative division (as of a government)," the phrase "governmental subdivision or agency thereof" would refer to an organization created by governmental subdivisions. *See* Webster's Third New International Dictionary, 8 (1976). However, the word "agency" can also mean a

person or thing through which power is exerted or/and achieved" in the sense of respondeat superior. *Id.* Consequently, sec. 893.80(3) could also be interpreted to require that the liability limit be a multiple of the number of municipalities creating the organization. Because of these conflicting interpretations, we conclude that this statute is ambiguous.

When a statute is ambiguous, we must ascertain legislative intent from the statute's language in relation to its scope, history, context, and object intended to be accomplished. *County of Milwaukee v. Proegler,* 95 Wis. 2d 614, 625–26, 291 N.W.2d 608, 613 (Ct. App. 1980). In determining the legislature's intent, we presume that the legislature intended an interpretation that advances the purpose of the statute. *State v. Ziekele,* 137 Wis. 2d 39, 46, 403 N.W.2d 427, 430 (1987).

We conclude that the legislature intended to limit the liability of an organization such as a joint fire department to $50,000 irrespective of the number of municipalities that formed the organization. Section 893.80(3) was enacted in response to the supreme court's decision in *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962). In *Holytz,* the court abolished the governmental immunity doctrine and invited the legislature to place limits on the amount of tort liability of political corporations and subdivisions. *Id.* at 29, 115 N.W.2d at 619–20. The legislative purpose in limiting liability was to specify the maximum liability of governmental units for torts committed by its officers, officials, agents, or employees. Legislative Council Report, 1976, *reprinted in* Wis. Stat. Ann. sec. 893.80(3) (West 1979).

471

To achieve this legislative purpose we construe the phrase "governmental subdivision or agency thereof" as limiting liability of the agency created by the governmental units, irrespective of their number. Under this construction, the agency created is entitled to the limitation, not each of the governmental units that participated in forming that agency.

The legislative purpose of limiting liability of governmental units and their agencies cannot be achieved if sec. 893.80(3) establishes various liability limits for agencies created by multiple governmental subdivisions. Construing liability limits based on the number of municipalities forming the agency would create much higher liability limits for the agency than the $50,000 limit imposed on a single governmental unit. For example, such a result would discourage governmental units from creating agencies for regional planning purposes. The legislature authorizing the creation of such agencies could not reasonably have meant to put such a substantial financial obstacle in the way of formulating multiple governmental agencies.

This construction is also consistent with the context in which the term agency is used in the statute. The entities immediately preceding the term agency include political corporation, governmental subdivision, and volunteer fire departments created under ch. 213. Within this context, the legislature was using the term agency as a governmental subdivision rather than imposing liability through the respondeat superior doctrine.

An additional reason in support of this construction is that if we adopted the statutory interpretation urged by Selzler, the subsequent phrase "against their officers, officials, agents, or employees for acts done in

their official capacity" would be rendered redundant. *See* sec. 893.80(3), Stats. We avoid an interpretation that would make statutory language redundant and superfluous. *Donaldson v. State,* 93 Wis. 2d 306, 315–16, 286 N.W.2d 817, 821 (1980).

Furthermore, we must construe a statute to harmonize with other sections. *See Levy v. Levy,* 130 Wis. 2d 523, 530, 388 N.W.2d 170, 173 (1986); *State v. Phillips,* 99 Wis. 2d 46, 50, 298 N.W.2d 239, 241 (Ct. App. 1980). The legislature permitted fire departments to be organized under ch. 213. *See* sec. 213.05, Stats. Thus, any fire departments so organized are subject to a specific and limited liability. Section 893.80(3), Stats. Volunteer fire departments, however, can also be organized under ch. 60. Fire departments organized under ch. 60 do not enjoy the $25,000 limitation that is applied to volunteer fire departments organized under ch. 213. *Id.* We cannot conclude that the legislature created the authority to organize under one of two chapters, one of which limits liability to $25,000, and the other which imposes liability limits based on the number of municipalities creating the agency. Such a contention envisions a legislative scheme creating grossly disparate treatment between volunteer fire departments formed under ch. 60, and those formed under the authority of ch. 213.

We therefore conclude that sec. 893.80(3) limits the liability of an agency created by multiple governmental subdivisions. Because the parties concede that the fire department created under the authority of ch. 60 is such a governmental agency, the maximum liability for tort claims made against the fire department is $50,000 per plaintiff.

In reaching these conclusions, we note that there is no allegation that the Towns of Osceola and Garfield and the Village of Dresser were themselves negligent. Any negligence is imputed to them by virtue of the conduct of the officers and firemen composing the volunteer fire company. Under these circumstances, the agency itself is entitled to the liability limitation created by sec. 893.80(3).

Having determined that both Edward Selzler and Ruth Selzler are entitled to recover no more than $50,000 from the Dresser, Osceola, Garfield Fire Department, we need not address the other issues raised on appeal regarding the damage award apportionment. Therefore, this matter is remanded to the trial court with directions to enter judgment in the amount of $50,000 for each of the plaintiffs, plus costs and disbursements provided by law.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded to the trial court with directions.