Martin MELLENTHIN and Heidi Mellenthin,
Plaintiffs-Respondents,

v.

Rodney BERGER, Durand Rural Fire Department
and Continental Western Insurance Company,
Defendants-Appellants.

Court of Appeals

*No. 02–2524. Oral argument April 7, 2003.—Decided
May 20, 2003.*

2003 WI App 126

(Also reported in 666 N.W.2d 120.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Francis M. Doherty* and *Michael W. Gill* and *Hale, Skemp, Hanson, Skemp & Sleik* of La Crosse. Oral argument by Francis M. Doherty.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charles B. Harris* and *Martha H. Heidt* and *Doar, Drill & Skow, S.C.,* of Baldwin. Oral argument by Martha H. Heidt.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Rodney Berger, Durand Rural Fire Department, and Durand Rural's insurer Continental Western Insurance Company appeal a nonfinal order determining that Durand Rural is not entitled to any form of immunity under Wis. Stat. § 893.80(4).[1] We conclude that the trial court erred in its analysis of Durand Rural's classification. We therefore reverse the order and remand so the trial court may enter an order consistent with this opinion.

### Background

¶ 2. The facts are undisputed. Pursuant to their duty to provide fire protection under Wis. Stat. § 60.55(1)(a), ten Pepin County towns created the Du-

---

[1] This court granted leave to appeal pursuant to Wis. Stat. § 809.50 on October 22, 2002. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

rand Rural Fire Department, incorporating under Wis. Stat. ch. 181.[2] Rodney Berger is the coordinator of Durand Rural as well as a firefighter.

¶ 3. Martin and Heidi Mellenthin live in Eau Galle, one of Durand Rural's founding towns. On August 28, 1999, the Mellenthins contacted the Pepin County Police Department about a fire on their property. The police relayed the call to Berger, who called the Mellenthins. While Berger offered to dispatch the fire truck, the Mellenthins asked Berger to come inspect the property first. Berger went to the property and determined that there was a fire inside one of the Mellenthins' silos containing two-year-old feed. Because the Mellenthins' insurance company would cover the loss of the feed, and concluding that it would be too dangerous for his firefighters to attempt to extinguish the fire, Berger determined the best course of action would be to allow the fire to burn itself out.

¶ 4. Unfortunately, the fire spread to the Mellenthins' barn. They called Durand Rural again on August 30, and when Berger arrived on the scene he discovered that the barn was already fully engulfed in flames and collapsing.

¶ 5. The Mellenthins sued Berger, Durand Rural and Durand Rural's insurer seeking damages based on Berger's and Durand Rural's alleged negligence in fail-

---

[2] There is also a contract between the City of Durand and Durand Rural. While the Mellenthins portray it as a contract for fire protection services, its primary use is to govern an equipment sharing arrangement; the city does not provide actual fire protection services to the towns. Moreover, on its face it refers to the "Rural Fire Fighting Organization," not Durand Rural. In any event, the Mellenthins do not develop an argument around the contract, so we will not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

ing to extinguish the silo fire. Berger and Durand Rural moved for summary judgment, claiming governmental immunity under Wis. Stat. § 893.80(4) as a "political corporation." The Mellenthins disputed the immunity claim, arguing that because Durand Rural was incorporated under Wis. Stat. ch. 181, it was a private, nonstock, nonprofit organization not entitled to immunity under § 893.80(4).

¶ 6. The Mellenthins also opposed the summary judgment motion, arguing that even if Durand Rural is entitled to immunity, questions of fact remain regarding the "private nuisance" and "compelling and known danger" exceptions to immunity. The trial court ruled that Durand Rural was not entitled to immunity because it was not incorporated under Wis. Stat. ch. 213 and denied the motion for summary judgment on the immunity issue. Durand Rural sought leave to appeal that nonfinal order, and we allowed the appeal. We conclude that Durand Rural is entitled to immunity. We further conclude that neither exception to immunity applies. Accordingly, we reverse the order.

## Standard of Review

■

¶ 7. We review a motion for summary judgment using the same well-known methodology the circuit court employs. *See Policemen's Annuity & Benefit Fund v. City of Milwaukee*, 2001 WI App 144, ¶ 9, 246 Wis. 2d 200, 630 N.W.2d 236; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Whether Durand Rural is entitled to governmental immunity involves questions of statutory interpretation we review de novo. *See Morris v. Juneau County*, 219 Wis. 2d 543, 550, 579 N.W.2d 690 (1998).

## Discussion

¶ 8. WISCONSIN STAT. § 60.55(1)(a) requires towns to provide fire protection, stating:

> The town board shall provide for fire protection for the town. Fire protection for the town, or any portion of the town, may be provided in any manner, including:
>
> 1. Establishing a town fire department.
>
> 2. Joining with another town, village or city to establish a joint fire department. . . .
>
> 3. Contracting with any person.
>
> 4. Utilizing a fire company organized under ch. 213.

¶ 9. WISCONSIN STAT. § 213.05, the applicable statute for the fourth option, allows "Any number of persons, not less than 15, not residing in any city or village [to] organize a fire company as a nonstock corporation under ch. 181 for the protection of life and property." In this case, § 213.05 was inapplicable,[3] and the towns instead incorporated their department directly under WIS. STAT. ch. 181 as a nonstock corporation.

¶ 10. The governmental immunity statute in this case, WIS. STAT. § 893.80(4), states:

[3] The Mellenthins attempt to explain why towns fulfill the definition of "persons" such that WIS. STAT. § 213.05 could have been utilized to create Durand Rural. Assuming but not deciding that a town is a "person" as described in § 213.05, this statute still requires a minimum of fifteen persons to create a fire company. Since there were only ten towns in this case, § 213.05 would not apply in any event.

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Believing its duty was to strictly construe the statute, the trial court determined, "if this is not a Chapter 213 fire company . . . then there is not immunity."

¶ 11. An attorney general's opinion contributes to part of the dispute in this case. While dealing with questions from the Department of Industry, Labor, and Human Relations, the attorney general opined, without supporting analysis, that "A fire department organized under chapters 213 and 181 is a private entity, despite its evident public purpose." 80 Op. Att'y Gen. 67 (1991). The attorney general also concluded: "The classification of a fire department depends on the enabling statute under which it was organized." *Id.* The Mellenthins cite this opinion in support of their contention that Durand Rural, because it was incorporated under WIS. STAT. ch. 181, is a private entity and therefore not entitled to immunity.[4]

---

[4] We question whether the "public" or "private" nature should be dispositive of an immunity determination, given the government's ability to contract with private firms to provide public services. *See, e.g., Lyons v. CNA Ins Cos.*, 207 Wis. 2d 446, 457, 558 N.W.2d 658 (Ct. App. 1996) (private parties contracting with municipal authorities to perform certain tasks may be entitled to immunity).

¶ 12. We agree with that part of the attorney general's opinion stating that the appropriate inquiry for determining the nature or classification of a fire department is the enabling statute. However, we disagree with the Mellenthins that the enabling statute in this case was WIS. STAT. ch. 181.

¶ 13. As the attorney general noted:

[T]he town board [is given] broad authority to provide for and fund fire protection. Flexibility in providing fire protection is necessary because of the widely varying circumstances of towns—circumstances that affect the level of fire protection needed or desired, such as population, geography, area, proximity to urban centers and commercial and industrial development.

80 Op. Att'y Gen., *supra,* at 63 (quoting 1983 Wis. Act 532, at 2158). Because the legislature has mandated that towns provide fire protection, we conclude WIS. STAT. § 60.55(1)(a) is the enabling statute we should use in classifying the department for immunity purposes in this case. Since the statute allows towns to create a fire department "in any manner," the use of WIS. STAT. chs. 181 or 213 to establish a fire department ultimately becomes irrelevant to our inquiry. The question is whether a ch. 60 fire department is entitled to immunity. We conclude that it is.

¶ 14. In *Selzler v. Dresser Fire Dept.,* 141 Wis. 2d 465, 415 N.W.2d 546 (Ct. App. 1987), we rejected a contention that the legislature intended disparate treatment of WIS. STAT. chs. 60 and 213 departments. We apply the same reasoning here. *Selzler* contemplated the differences between a WIS. STAT. ch. 60 department and a WIS. STAT. ch. 213 department in the context of WIS. STAT. § 893.80(3). Section 893.80(3) imposes liability limits: $50,000 for a political corporation, government subdivision or agency thereof, and

$25,000 for a ch. 213 department. In *Selzler*, the fire department had been founded by three towns, and the question was whether the liability limit was $50,000 as one governmental unit or $150,000—$50,000 for each member town. *Id.* at 469.

¶ 15. Observing that the legislature allows fire departments to form under both WIS. STAT. chs. 60 and 213, we concluded that the legislature would not have "created the authority to organize under one of two chapters, one of which limits liability to $25,000, and the other which imposes liability limits based on the number of municipalities creating the agency." *Id.* at 473. We concluded that the "legislative purpose of limiting liability of governmental units and their agencies cannot be achieved if sec. 893.80(3) established various liability limits for agencies created by multiple governmental subdivisions." *Id.* at 472. As such, we rejected "a legislative scheme creating grossly disparate treatment" between ch. 60 and ch. 213 departments. *Id.* at 473. For the same reason, we reject the notion that a ch. 213 department can receive an immunity, but a chapter 60 department, regardless how it is formed, will not. As we explain below, any ch. 60 department may be considered a government subdivision or agency and, as such, is entitled to immunity under the appropriate language of WIS. STAT. § 893.80(4).

¶ 16. If the statute did not immunize departments formed pursuant to WIS. STAT. ch. 60, we would face potentially "grossly disparate" results. For example, we could assume ch. 60 is irrelevant to an immunity determination. Because ch. 60 authorizes towns to provide fire protection "in any manner," § 60.55(1)(a), a town could utilize a WIS. STAT. ch. 213 department or it could, as here, incorporate a fire department under WIS. STAT. ch. 181. If we were to accept the Mellenthins'

argument that a ch. 181 department is not entitled to immunity because it is a private entity, we are faced with a situation where one town's department is immunized specifically because it is a ch. 213 department, but another town's department would not be entitled to immunity. We believe it would be "grossly disparate" treatment for one town's legislatively mandated fire department to receive immunity and another town's to be exposed to liability.

¶ 17. In short, we conclude that the legislature would not allow volunteer departments under WIS. STAT. ch. 213 to be immune from suit while simultaneously exposing mandatory, town-created departments to liability.[5] Such a situation is counterintuitive considering the purpose of "limiting liability of governmental units." The only logical reconciliation is that a fire department organized under WIS. STAT. ch. 60 is a governmental subdivision or agency entitled to the immunity conferred by WIS. STAT. § 893.80(4).[6]

¶ 18. Durand Rural's articles of incorporation state: "The purpose for which this corporation is organized is to establish and operate a joint fire department for the member Towns . . . ." It is evident that

---

[5] We note that, as Durand Rural pointed out at oral argument, one reason the legislature specifically immunized WIS. STAT. ch. 213 departments is because they may indeed remain private and unaffiliated with a government such that they would never be considered an "agent" or "subdivision" of the governmental unit.

[6] When towns are required to create a department, we can conceive no other classification to apply. Whether towns create the department themselves or contract with a private entity to be the department, the department becomes either a subdivision of the towns or an agent of the towns.

Durand Rural exists specifically in response to the legislatively imposed duty of Wis. Stat. § 60.55(1)(a). *See Cohn v. Town of Randall*, 2001 WI App 176, ¶ 5, 247 Wis. 2d 118, 633 N.W.2d 674 (interpretation of a document is a question of law). Thus, Durand Rural is a subdivision or agency of its founding towns and is entitled to immunity. Because we have determined that governmental immunity applies, we now turn to the Mellenthins' "compelling and known danger" and "private nuisance" arguments, two exceptions to the immunity doctrine.[7]

## Compelling and Known Danger

■

¶ 19. In contemplating whether Berger and Durand Rural were facing a "compelling and known danger," we examine the scope of the common law doctrine of public officer immunity. This is a question of law reviewed de novo. *Kimps v. Hill*, 200 Wis. 2d 1, 8, 546 N.W.2d 151 (1996).

■

¶ 20. Under the general rule in Wisconsin,[8] public officers and employees are immune from personal liability for injuries or damages resulting from acts per-

---

[7] The trial court determined that Durand Rural was not entitled to statutory immunity, so it never addressed whether these exceptions applied. However, both exceptions involve questions of law, and we do not need to rely on a trial court's determination of these issues. *City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992). For completeness' sake, we are compelled to address the immunity issue in its entirety.

[8] Actually, in the case of municipalities, liability is the rule and immunity is the exception. These doctrines are therefore exceptions to the exception. *See Kimps v. Hill*, 200 Wis. 2d 1, 10 n.6, 546 N.W.2d 151 (1996).

formed within the scope of official duties. *See id.* at 10. The existence of a compelling and known danger, however, warrants a special exception to this general rule of public employee immunity. *See id.* at 15; *Cords v. Anderson*, 80 Wis. 2d 525, 542, 259 N.W.2d 672 (1977). This is because the danger may present a "duty so clear and absolute that it falls within the definition of a ministerial duty." *Kimps*, 200 Wis. 2d at 15 (quoting *Cords*, 80 Wis. 2d at 542).

¶ 21. "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). Or, as clarified in *C.L. v. Olson*, 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988), a public officer's duty is ministerial only where "the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act."

¶ 22. As the Mellenthins point out, "[f]ire, by its nature, creates an emergency." *Rockwood Vol. Fire Dept. v. Town of Kossuth*, 260 Wis. 331, 333, 50 N.W.2d 913 (1952). They argue that Berger and Durand Rural had the "ministerial duty . . . to at least monitor the situation to assure that the fire remained under control within the silo." We disagree that there was a ministerial duty.

¶ 23. While the legislature requires towns to provide fire protection, the legislature has not prescribed the "time, mode and occasion for [fire protection's] performance" with any certainty, much less with "certainty [so precise] that nothing remains for judgment or

discretion." *See Lister,* 72 Wis. 2d at 301. Indeed, the court in *Rockwood* noted, "It would be ridiculous to say that only a proper legislative or governing body may exercise the discretion necessary to determine whether the services of a fire department are required in a given circumstance." *Rockwood,* 260 Wis. at 333.

■

¶ 24. We also reject any notion that the fire was so dangerous that Berger and Durand Rural were left with "no discretion not to act." *See C.L.,* 143 Wis. 2d at 715. The Mellenthins' own actions belie such an assertion. After the police reported the fire to Berger, he called the Mellenthins and offered to send a fire truck to their property. The Mellenthins instead asked Berger to inspect the property first. Thus the Mellenthins also suspected the fire would burn itself out in the silo without the need for Durand Rural to extinguish it. While we sympathize with the Mellenthins' property loss, "A party cannot work backwards from a consequence to create a duty that is 'absolute, certain and imperative.' " *Kimps,* 200 Wis. 2d at 12. The doctrine of "compelling and known danger" does not apply to strip Berger or Durand Rural of immunity.

### Private Nuisance

¶ 25. The Mellenthins contend that Berger and Durand Rural, by failing to extinguish the fire, "maintained or permitted a private nuisance" and that no statutory or common law immunity doctrine empowers a public body to create or maintain a private nuisance. *Hillcrest Golf & Country Club v. City of Altoona,* 135 Wis. 2d 431, 441, 400 N.W.2d 493 (Ct. App. 1986). While the Mellenthins correctly summarize *Hillcrest,* their argument presupposes the silo fire was a nuisance. We conclude as a matter of law that it was not.

¶ 26. The legal basis for a nuisance claim presents a question of law that we resolve without deference to the trial court. *Stunkel v. Price Elec. Co-op.*, 229 Wis. 2d 664, 668, 599 N.W.2d 919 (Ct. App. 1999). A nuisance is a "material and unreasonable impairment of the right or enjoyment of the individual's right to the reasonable use of his or her property or the impairment of its value." *Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App 271, ¶ 18, 249 Wis. 2d 62, 637 N.W.2d 422. It is also defined as an "invasion" interfering with the use and enjoyment of property rights and privileges. *See Stunkel*, 229 Wis. 2d at 668–69.

¶ 27. The private nuisance doctrine is traditionally employed in Wisconsin to balance the conflicting rights of landowners because we recognize that landowners do not have an absolute or unlimited right to use their land in a way that injures the rights of others. *Prah v. Maretti*, 108 Wis. 2d 223, 230–31, 321 N.W.2d 182 (1982). The use of the doctrine is evident in the cases the Mellenthins cite in support of their claim. In each case, the governmental body owned property but was utilizing the property in such a way that the government created a nuisance that interfered with or "invaded" the rights of neighboring landowners.

¶ 28. However, there is no such invasion here. Berger and Durand Rural did not start the fire, and the fire was not on governmental property or any other property neighboring the Mellenthins'. While the fire may have ultimately impaired the Mellenthins' reasonable use of their property or impaired its value, the

nuisance doctrine is inapplicable given the facts of the case. We reverse and remand for an order consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.