# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2011AP583 |
| COMPLETE TITLE: | Marilyn M. Brown and Delores M. Schwartz,<br>      Plaintiffs-Appellants-Petitioners,<br>Dean Health Insurance, Inc., Conseco Insurance Company and<br>Kathleen Sebelius,<br>      Involuntary-Plaintiffs,<br>    v.<br>Acuity, A Mutual Insurance Company, Parnell P. Burditt,<br>American Alternative Insurance Company and Okauchee Fire Department,<br>      Defendants-Respondents,<br>Utica Mutual Insurance Company,<br>      Defendant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 342 Wis. 2d 236, 815 N.W.2d 719
(Ct. App. 2012 – Published)
PDC No: 2012 WI App 66

| | |
|---|---|
| OPINION FILED: | July 9, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 12, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Donald J. Hassin Jr. |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiffs-appellants-petitioners, there were briefs by *Don C. Prachthauser*, *Keith R. Stachowiak*, and *Murphy & Prachthauser, S.C.*, Milwaukee, and oral argument by *Keith R. Stachowiak*.


    For defendants-respondents American Alternative Insurance Company and Okauchee Fire Department, there was a brief by

*Bennett J. Brantmeier*, *Amanda J. Ramaker*, *Danielle H. Thompson* and *Brantmeier Law, LLC*, Jefferson, with oral argument by *Bennett J. Brantmeier*.

For defendants-respondents Acuity, A Mutual Insurance Company, and Parnell P. Burditt, there was a brief filed by *Lance S. Grady* and *Daniel K. Miller*, Waukesha, with oral argument by *Lance S. Grady*.

An amicus curiae brief was filed by *J. Michael Riley* and *Axley Brynelson, LLP*, Madison, and oral argument by *J. Michael Riley* on behalf of Wisconsin Association for Justice.

An amicus curiae brief was filed by *Michele M. Ford* and *Crivello Carlson, S.C.*, Milwaukee, on behalf of Wisconsin Defense Counsel.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2011AP0583
(L.C. No.  2010CV520)

STATE OF WISCONSIN                    :          IN SUPREME COURT

Marilyn M. Brown and Delores M. Schwartz,

          Plaintiffs-Appellants-Petitioners,

Dean Health Insurance, Inc., Conseco Insurance
Company and Kathleen Sebelius,

          Involuntary-Plaintiffs,

     v.

Acuity, A Mutual Insurance Company, Parnell P.
Burditt, American Alternative Insurance Company
and Okauchee Fire Department,

          Defendants-Respondents,

Utica Mutual Insurance Company,

          Defendant.

**FILED**

**JUL 9, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed and cause remanded.*

¶1   ANN WALSH BRADLEY, J.   The petitioners, Marilyn M. Brown (Brown) and Delores M. Schwartz (Schwartz), seek review of a published opinion of the court of appeals affirming the

circuit court's grant of summary judgment in favor of the defendants, dismissing Parnell P. Burditt (Burditt), the Okauchee Fire Department (OFD), and their insurers.[1] Brown and Schwartz commenced an action alleging that Burditt, a volunteer firefighter and a member of the OFD, negligently caused their injuries when he drove his vehicle through a red stop signal into an intersection, where it collided with a vehicle carrying Brown and Schwartz. The circuit court granted summary judgment dismissing Burditt, the OFD, and their insurers on the grounds that Burditt is shielded by public officer immunity and that his acts do not fall within the ministerial duty exception to that immunity.

¶2 Brown and Schwartz argue that Burditt was not acting within the scope of his employment as a volunteer firefighter when the collision occurred, thus placing him outside the class of individuals subject to public officer immunity. Additionally, they argue that because Burditt acted contrary to a ministerial duty to stop at the red stop signal, his acts fall within the ministerial duty exception to public officer immunity.

¶3 We conclude that Burditt was acting within the scope of his employment when the collision occurred. Accordingly, he is within the class of individuals that may be shielded by public officer immunity.

---

[1] Brown v. Acuity, 2012 WI App 66, 342 Wis. 2d 236, 815 N.W.2d 719, affirming the circuit court for Waukesha County, Donald J. Hassin, J., presiding.

¶4 However, we further conclude that Burditt is not entitled to public officer immunity because his acts in proceeding through the red stop signal without an audible signal violated a clear ministerial duty. He therefore falls within that exception to public officer immunity. The "rules of the road" statutes codified at Chapter 346 of the Wisconsin Statutes required Burditt to stop at the red stop signal because his vehicle lacked an audible signal. Because Burditt's acts fall within the ministerial duty exception to public officer immunity, he is not shielded by immunity and summary judgment is not appropriate. Accordingly, we reverse the court of appeals and remand for further proceedings.

I

¶5 The material facts of this case are undisputed. On June 8, 2008, a dark and rainy evening, Burditt was driving his truck on his way to the OFD fire station when he came to an intersection with a four-lane divided highway. It was approximately 10:20 p.m., and Burditt was responding to an emergency call issued by the OFD. The OFD is organized as a non-stock corporation and serves several communities in the area around Okauchee, Wisconsin. Burditt has been a member of the OFD since 2002. Burditt served as a Lieutenant volunteer firefighter and Emergency Medical Services (EMS) Service Director with the OFD.

¶6 When Burditt reached the intersection, he encountered a red stop signal and accordingly he brought his truck to a stop. His truck had three flashing lights activated, but it had

no audible signal.[2] Burditt looked to his left into the southbound lanes of the intersecting road and saw that there was no oncoming traffic coming from that direction, so he proceeded through the red stop signal into the middle of the intersection.

¶7 Burditt stopped his truck again at the median between the northbound and southbound lanes of the intersecting road. He looked to the right into the northbound lanes. Seeing a vehicle coming, he waited for the other vehicle to pass through the intersection. However, just prior to reaching the intersection, the other vehicle pulled over to the side of the road and stopped.

¶8 After seeing the other vehicle pull over, Burditt proceeded across the northbound lanes, still against the red stop signal. A third vehicle that had been traveling behind the vehicle that pulled over collided with Burditt's vehicle as he was crossing the northbound lanes. He did not see the vehicle that collided with his truck. Burditt later acknowledged that he had no authority to proceed against the red stop signal, calling it a "poor decision."

¶9 As indicated, Burditt was on the road on the evening of June 8 in response to the OFD's emergency call for

---

[2] One revolving red light was located on the vehicle's center dash, another flashing light was located on the vehicle's driver side, and a strobe light was mounted on the passenger-side visor.

assistance.[3]   The OFD uses a system of pagers to dispatch emergency calls to volunteer firefighters.  When the volunteer firefighters receive the call on their pagers, they decide if they can respond.  In most cases, responding to a call initially means leaving from home, work, or some other location and traveling to the fire station.  For calls that are related only to EMS, the volunteer firefighters respond directly to the scene of the emergency.

¶10  The call that was issued on June 8 was not an EMS-only call, and therefore Burditt was traveling to the fire station. The means and methods by which Burditt traveled to the station were left up to him.

¶11  The OFD exercises no control over how volunteer firefighters choose to travel to the fire station when responding to a call.  Variables of travel such as route, speed, and the type of vehicle used to travel to the fire station are left entirely to the volunteer firefighters.

¶12  When the volunteer firefighters arrive at the station on an emergency call, generally they are expected to obtain the needed equipment for responding to the emergency.  Once equipped, the volunteer firefighters then travel to the scene of the emergency.  Assignments in responding to the emergency are normally given en route to the call.

---

[3] The emergency later turned out to be a flooded basement. However, Burditt did not know the call was for a flooded basement when he received it——he received only a message on his OFD-issued pager that an emergency was taking place.

¶13 The OFD procedures are collected in a set of Standard Operating Guidelines that are set forth by the OFD.   One such guideline governs the manner in which volunteer firefighters may utilize personal vehicles to respond to calls:

S.O.G. 300.0

Goal: Provide a guideline for the operation of motor vehicles.

. . . .

Use of Personal Vehicles

A) Members may have emergency lights only

B) Members vehicles used to respond to alarms are not covered by the Okauchee Fire Department

C) Unless authorized, emergency lights will not be used, if responding more than 15 minutes f[rom] the fire station.   Red lights may be used only when responding to an alarm for OKFD, unless authorized by O.I.C.

No warning device will automatically grant you the right of way!

Another guideline states that "Wisc. Statute 346.03" is an "Applicable State Statute[]" for emergency vehicles and that guideline reminds the volunteer firefighters that they "are responsible to operate within these guidelines" when operating vehicles for the OFD.

¶14 Officers of the OFD are expected to carry pagers twenty-four hours a day, seven days a week.   When a call to respond to an emergency goes out, the officers are expected to respond to the emergency if available.   From the time of dispatch until the time that an emergency call ends, Burditt and

other members of the OFD are obligated to follow the orders of their commanding officers.

¶15 Brown and Schwartz were passengers in the vehicle that collided with Burditt's truck.  They commenced this action, alleging that Burditt negligently caused their injuries.  The allegations in the complaint are brief and are set forth in relevant part as follows:

> On June 8, 2008, in Waukesha County, Wisconsin, a motor vehicle collision occurred involving automobiles being driven by defendant, Parnell Burditt, who was responding to a volunteer fire call with the Okauchee Fire Department and struck the automobile being driven by Frank V. Brown.  Plaintiffs, Marilyn M. Brown and Delores M. Schwartz were passengers in the vehicle operated by Frank V. Brown.
>
> [] The negligence of defendant, Parnell Burditt, was a substantial factor causing the collision.

¶16 Burditt moved for summary judgment, arguing that he was acting within the scope of his employment with the OFD when he was responding to the call and traveling to the fire station, and that he was therefore shielded by public officer immunity.[4]

---

[4] Under Wis. Stat. § 893.80(4), public officers are immune from liability for certain acts.  The statute provides as follows:

> (4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

7

Additionally, he contended that his acts in proceeding through the intersection were discretionary, and as a result, he did not fall within the ministerial duty exception to public officer immunity.  In response, Brown and Schwartz argued that Burditt was not entitled to immunity because he was not acting within the scope of his employment when the accident occurred and that his acts were contrary to a ministerial duty to stop at the red stop signal.

¶17  In addressing the motion, the circuit court considered first whether Burditt was acting in the scope of his employment at the time the collision occurred.  It determined that "the minute that . . . he's responding to the circumstances of the emergency, whether he goes to the firehouse, the scene of the motor vehicle accident, the crisis . . . it's occurring within the scope of the umbrella covered by the Okauchee Fire Department, [and] he is acting within the scope of his employment."

¶18  It addressed next whether Burditt acted contrary to a ministerial duty when he proceeded through the red stop signal. The circuit court explained that the act of going through the red stop signal requires discretion, "one to operat[e] the vehicle, two [to] put your foot on the accelerator, and three [to] drive your car through the intersection." It distinguished a duty to "obey traffic laws" from a ministerial duty, and ultimately concluded that the duties imposed on Burditt in this case were not ministerial.  As a result, the circuit court

8

granted summary judgment dismissing Burditt and his insurer from the case.

¶19 The OFD subsequently moved for summary judgment, arguing that the circuit court's rationale for dismissing Burditt from the action entitled it also to immunity and to the same relief.  The circuit court granted summary judgment dismissing OFD and its insurer from the case "for the same reasons" that it dismissed Burditt and his insurer.

¶20 The court of appeals affirmed the circuit court. Brown v. Acuity, 2012 WI App 66, 342 Wis. 2d 236, 815 N.W.2d 719. Addressing first whether Burditt was within the scope of his employment, the court of appeals determined that Burditt's relationship with the OFD is "nontraditional."  Id., ¶9.  It observed that although Burditt chooses the mode of transportation and the route he will take once a call comes in, "it is the OFD that decides when a call goes out and to whom." Id.  The court of appeals opined that volunteer firefighters "are actuated by a purpose to serve the fire department from the moment they choose to respond to an emergency call."  Id. Ultimately, it concluded that Burditt was acting within the scope of his employment while en route to the fire station.  Id.

¶21 Turning to address whether Burditt's acts in proceeding through the red stop signal were contrary to a ministerial duty, the court of appeals determined that the ministerial duty exception to public officer immunity does not apply.  It concluded that although Burditt undisputedly "failed to meet" the standard set forth in Wis. Stat. § 346.03(3) (2009-

9

10)[5] requiring an audible and visual signal when proceeding through a red stop signal, that failure merely "subjected him[] to the penalty for violating" the statute and did not render the duty to comply ministerial.  Id., ¶18

## II

¶22  In this case, we are called upon to review the opinion of the court of appeals that affirmed the circuit court's grant of summary judgment in favor of the defendants.  The circuit court dismissed Burditt, the OFD, and their insurers because of its conclusion that Burditt is shielded by public officer

---

[5] All subsequent references to the Wisconsin Statutes refer to the 2009-10 version unless otherwise indicated.  Wisconsin Stat. § 346.03(3) provides as follows:

> (3)  The exemption granted the operator of an authorized emergency vehicle by sub. (2)(a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, except as otherwise provided in sub. (4m). The exemptions granted by sub. (2)(b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4) or (4m).

The requirements set forth in Wis. Stat. § 346.03(3) qualify a grant of privilege to the operator of an authorized emergency vehicle to "[p]roceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation."  Wis. Stat. § 346.03(2)(b).

immunity.[6]   Summary  judgment  is  appropriate  when  there  is  no genuine  issue  as  to  any  material  fact  and  the  moving  party  is entitled  to  a  judgment  as  a  matter  of  law.   Wis.  Stat. § 802.08(2).   Here,  the  material  facts  are  undisputed  and  the resolution of the case ultimately turns on questions of law.

¶23  The  first  question  presented  is  whether  Burditt  falls within  a  class  of  individuals  who  may  be  shielded  by  public officer  immunity  because  he  was  acting  within  the  scope  of  his employment  as  a  volunteer  firefighter  at  the  time  the  accident occurred.   Whether  Burditt  was  acting  within  the  scope  of  his employment  given  the  undisputed  material  facts  presents  a question  of  law  that  we  review  independently  of  the determinations  of  the  circuit  court  and  the  court  of  appeals.

---

[6] The  OFD  and  its  insurer  argue  that  Burditt  is,  and therefore  that  they  are,  shielded  by  immunity.   Additionally, they  echo  Burditt's  argument  that  Burditt  was  within  the  scope of his employment at the time of the collision.

The  OFD  and  its  insurer  appear  to  advance  these  positions because  they  additionally  contend  that  Burditt's  insurer  is  the primary  insurer  under  Wis.  Stat.  § 895.46,  a  statute  that  sets forth  indemnification  criteria  for  governmental  entities  when public  officers  become  liable  for  acts  committed  within  the scope  of  their  employment.   They  reason  that  if  Burditt  was within  the  scope  of  his  employment  and  not  immune,  the limitation  on  damages  set  forth  in  Wis.  Stat.  § 893.80(3) applies  to  any  damages  that  are  awarded.   Thus,  any  potential damages  would  fall  within  the  liability  limits  of  Burditt's insurance  policy  and  they  would  not  be  responsible  for  any damages.

The  questions  concerning  the  OFD's  ultimate  liability  and whether  there  are  statutory  limitations  on  any  damages  that  may be  awarded  are  outside  the  scope  of  our  review  and  we  do  not address them.

See <u>Olson v. Connerly</u>, 156 Wis. 2d 488, 494-95, 457 N.W.2d 479 (1990).

¶24 If we determine that Burditt was acting within the scope of his employment as a volunteer firefighter, we must then determine whether Burditt's acts in proceeding through a red stop signal fall within the ministerial duty exception to public officer immunity. Whether the ministerial duty exception to public officer immunity applies to undisputed facts presents a question of law that we review independently of the determinations of the circuit court and the court of appeals. <u>Pries v. McMillon</u>, 2010 WI 63, ¶19, 326 Wis. 2d 37, 784 N.W.2d 648.

### III

¶25 We first address whether Burditt was acting within the scope of his employment at the time of the collision. Burditt argues that he was acting as a volunteer firefighter from the moment he chose to respond to the call and began to travel to the fire station. He contends that this case differs from a typical commuter case and therefore the general rule set forth in <u>DeRuyter v. Wis. Elec. Power Co.</u>, 200 Wis. 2d 349, 546 N.W.2d 534 (Ct. App. 1996) stating that an employee is not acting within the scope of his employment when going to and from a given place of employment does not apply under these circumstances. Because he was merely acting within the scope of his employment, Burditt contends that he falls within the class

12

of individuals to which public officer immunity applies.[7] Thus, the ultimate aim of our inquiry into whether Burditt acted within the scope of his employment is to determine whether he falls within the class of individuals who may be shielded by public officer immunity.

¶26 We begin that inquiry by examining DeRuyter to determine whether it sets forth an analytical framework for the present case. In that case, an individual was driving from his home to a vocational training session at his employer's central training center. DeRuyter, 200 Wis. 2d at 355. While traveling, he lost control of his vehicle and caused a tanker filled with jet fuel to jackknife, roll down an embankment, and burst into flames, killing its driver. Id. at 355-56.

¶27 Two civil actions were commenced after the accident, and both alleged that the driver was acting within the scope of his employment with Wisconsin Electric when the accident occurred. Id. at 356. The allegations were advanced in order to render Wisconsin Electric vicariously liable through the doctrine of respondeat superior. Id. at 358-59.

---

[7] Public officer immunity applies "regardless of whether the public [officer] is employed by the state or by a political subdivision of the state," such as a municipality. Kierstyn v. Racine Unified School Dist., 228 Wis. 2d 81, 89, 596 N.W.2d 417 (1999). Although the OFD is organized as a non-stock corporation and not as a fire company under Chapter 213 of the Wisconsin statutes, it is considered a government subdivision or agency for the purposes of an immunity analysis. See Mellenthin v. Berger, 2003 WI App 126, ¶¶9, 15, 265 Wis. 2d 575, 666 N.W.2d 120 (a fire department that is a non-stock corporation is considered a government subdivision or agency for the purposes of Wis. Stat. § 893.80(4)).

¶28 The court of appeals, in concluding that the driver was not acting within the scope of his employment, noted that the "touchstone of scope-of-employment issues . . . is employer control over the employee." Id. at 360. It set forth as a "general maxim" in commuter cases that where an employee works for another at a given place of employment, and lives at home or boards himself, "it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and place of employment." Id. at 361. Therefore, under those circumstances, only when the employer "exercises control over the method or route of the employee's travel to or from work can the employee be said to be acting within his or her employment."[8] Id. The DeRuyter court focused on employer control in the commuting context because "without such control, the employee is not actuated by a purpose to serve the employer . . . but is solely promoting the employee's 'own convenience.'" Id. at 361-62.

¶29 Thus, the DeRuyter court's ultimate focus was on whether the employee is actuated by a purpose to serve the employer. Id. Other scope of employment cases likewise focus on that same requirement. For example, in Olson v. Connerly,

---

[8] See also Murray v. Travelers Ins. Co., 229 Wis. 2d 819, 827, 601 N.W.2d 661 (Ct. App. 1999) ("DeRuyter determined that an employer could be held vicariously liable for the negligent acts of an employee when commuting only if the employer exercised control over the method or route of the employee's travel.").

14

156 Wis. 2d 488, 457 N.W.2d 479 (1990), this court addressed a scope-of-employment question arising under Wis. Stat. § 895.46(1)(a), a public officer indemnification statute.[9]

¶30  In Olson, a faculty member argued that he was acting within the scope of his employment when he negligently caused injury to a medical assistant, making the State responsible for the damages and costs entered against him pursuant to Wis. Stat. § 895.46(1)(a).  Id. at 496.  The Olson court surveyed other scope of employment cases arising in different contexts to determine whether the faculty member was acting within the scope of his employment.  Id. at 496-97.  It stated that this court has "always deemed significant the employee's intent at the time the acts in question were committed."  Id. at 497-98.

¶31  Ultimately, the Olson court determined that there is no requirement that serving the employer be the employee's "only purpose or even the employee's primary purpose."  Id. at 499.

---

[9] Wisconsin Stat. 895.46(1)(a) provides as follows, in relevant part:

> (1)(a) If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee, except as provided in s. 146.89(4), in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee. . . .

Rather, an employee's conduct is not within the scope of his employment if "it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purposes." Id. at 499-500.

¶32 Here, as in other contexts, the focus of our inquiry must likewise center on whether an employee is actuated by a purpose to serve his employer. However, a different analysis from the one set forth in DeRuyter is required under circumstances where the employee does not have a fixed place of employment. Recognizing the differences in cases where there is no fixed place of employment, the court of appeals declared that the DeRuyter analysis "does not apply" in those circumstances.[10] Murray v. Travelers Ins. Co., 229 Wis. 2d 819, 828, 601 N.W.2d 661 (Ct. App. 1999).

¶33 In Murray, a physical therapist was required to schedule appointments with clients of her employer and travel to and from the homes of the patients to administer physical therapy to them. Id. at 823-24. One day, on her way from one

---

[10] Case law indicates that there are other exceptions to the "general maxim" that where an employee works for another at a given place of employment, and lives at home or boards himself, "it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and place of employment." DeRuyter v. Wis. Elec. Power Co., 200 Wis. 2d 349, 361, 546 N.W.2d 534 (Ct. App. 1996). For additional discussion of the "general maxim" and its exceptions, see Christopher Vaeth, Employer's Liability for Negligence of Employee in Driving his or her own Automobile, 27 A.L.R. 5th 174 (1995) (collecting cases that identify the "coming and going" rule and the exceptions to that rule, including the "on-call" exception).

appointment to another appointment, she was involved in an automobile accident with a third party, and one of the passengers in the other vehicle commenced an action against her and her employer. Id. at 823.

¶34 The court of appeals reasoned that the circumstances presented in that case distinguished it from DeRuyter because under DeRuyter, the employee must have a fixed place of employment. Id. at 827-28. Upon determining that the DeRuyter analysis did not apply, the court of appeals examined the circumstances of the physical therapist's travel and concluded that her travel "was actuated by a purpose to serve her employer when the accident occurred." Id. at 831.

¶35 Like Murray, the facts of this case do not comfortably fit into the DeRuyter analysis. Burditt is an on-call volunteer firefighter who could be called to any number of locations at any time. Sometimes he may be required to report to the fire station and sometimes he may need to report directly to the scene of the emergency depending on the nature of the call. Even though the OFD guidelines require him to travel first to the fire station in responding to a non-EMS call, the fire station is still not Burditt's ultimate destination. Rather, he is expected to pick up the necessary equipment and travel again to the scene of the emergency.

¶36 Thus, Burditt is not a typical commuter with a fixed place of employment as described by DeRuyter. Instead he is more like the physical therapist in Murray, whose employment required her to travel to a number of destinations.

17

Accordingly, the DeRuyter "general maxim" does not apply in this case. 200 Wis. 2d at 361. Like the Murray and Olson courts, we focus instead on whether Burditt was actuated by a purpose to serve his employer when the accident occurred.

¶37 The undisputed facts of this case show that Burditt was actuated by a purpose to serve the OFD when the accident occurred. His entire purpose in traveling to the fire station on the evening of June 8 was to respond to the emergency call that had come through on his pager. No one argues that he had any other motivation.

¶38 Furthermore, once he responded, Burditt was obligated to follow the orders of his commanding officers. Although DeRuyter does not apply, the fact that Burditt was bound by the orders of his commanding officers lends further support to our analysis.[11]

---

[11] In 2011 Wisconsin Act 162, effective April 12, 2012, the legislature amended Wis. Stat. § 893.80 to expressly provide that an "agent" for the purposes of the immunity analysis includes a volunteer firefighter. One element of the statute provides that a volunteer firefighter must be "subject to the right of control of the volunteer company":

> (1b) In this section, "agent" includes a volunteer. In this subsection, "volunteer" means a person who satisfies all of the following:

> (a) The person provides services or performs duties for and with the express or implied consent of a volunteer fire company organized under ch. 181 or 213, political corporation, or governmental subdivision or agency thereof. A person satisfies the requirements under this paragraph even if the activities of the person with regard to the services and duties and the details and method by which the services are provided

18

¶39 Therefore, we conclude that Burditt, in responding to the call, acted within the scope of his employment. Because he was acting within the scope of his employment as a volunteer firefighter, Burditt falls within the class of individuals who may be shielded by public officer immunity. See Wis. Stat. § 893.80(4).

IV

¶40 Having determined that Burditt falls within the class of individuals who may be shielded by public officer immunity, we address next whether Burditt's allegedly negligent acts qualify for an exception to that immunity. Brown and Schwartz argue that Burditt acted contrary to a ministerial duty to follow certain "rules of the road," which are codified in Chapter 346 of the Wisconsin statutes. Specifically, they contend that Burditt disregarded a statutory requirement that he

---

and the duties are performed are left to the discretion of the person.

(b) The person is subject to the right of control of the volunteer company, political corporation, or governmental subdivision or agency described in par. (a).

(c) The person is not paid a fee, salary, or other compensation by any person for the services or duties described in par. (a). In this paragraph, "compensation" does not include the reimbursement of expenses.

Wis. Stat. § 893.80(1b) (2011-12). Although the current Wis. Stat. § 893.80(1b) was not in effect during the relevant events of this case, our analysis is consistent with the elements set forth by the legislature in the recent revisions to the statute.

may not proceed through a red stop signal unless he activates both an emergency light and an audible signal as set forth in Wis. Stat. § 346.03(3).

¶41 Public officer immunity is grounded in Wis. Stat. § 893.80(4).  The statute provides as follows:

> (4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Thus, a public officer is immune from "any suit" for "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."   Id.; see also Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693.

¶42 The general rule of immunity for public officers in their performance of acts within the scope of employment is subject to four exceptions identified in case law.  Scott v. Savers Property and Cas. Ins. Co., 2003 WI 60, ¶16, 262 Wis. 2d 127, 663 N.W.2d 715.  The four exceptions to public officer immunity are set forth as follows:

> Both state and municipal immunity are subject to several exceptions "representing a judicial balance struck between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.'" . . . There is no immunity against liability associated with: 1) the performance of ministerial duties imposed by law; 2) known and

20

compelling dangers that give rise to ministerial duties on the part of public officers or employees; 3) acts involving medical discretion; and 4) acts that are malicious, willful, and intentional.

Lodl v. Progressive Northern Ins. Co., 2002 WI 71, ¶24, 253 Wis. 2d 323, 646 N.W.2d 314.

¶43 In this case, the sole exception at issue is the ministerial duty exception. A public officer's duty is ministerial only when it is "absolute, certain and imperative," involving the "performance of a specific task" that the law imposes and defines the "time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." Lister v. Board of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). If liability is premised on either the negligent performance or non-performance of a ministerial duty, then immunity will not apply. Lodl, 253 Wis. 2d 323, ¶26.

¶44 To determine whether a ministerial duty exists, this court has in past cases examined the language of an applicable statute, regulation, or procedure that is argued to impose such a duty. See, e.g., id., ¶¶29-30 (examining an operations policy guideline to determine whether it imposed a ministerial duty); Bicknese v. Sutula, 2003 WI 31, ¶25, 260 Wis. 2d 713, 660 N.W.2d 289 (evaluating an employee policy manual); Umansky v. ABC Ins. Co., 2009 WI 82, ¶18, 319 Wis. 2d 622, 769 N.W.2d 1 (examining a safety regulation). The duty imposed by the statute, regulation, or procedure must conform to all elements of a

21

ministerial duty. <u>Yao v. Chapman</u>, 2005 WI App 200, ¶31, 287 Wis. 2d 445, 705 N.W.2d 272.

¶45 Here, Brown and Schwartz argue that the "rules of the road" codified at Chapter 346 of the Wisconsin Statutes imposed a ministerial duty upon Burditt to stop at a red stop signal. The "rules of the road" generally require that a vehicle must stop at a red stop signal:

> (1) Whenever traffic is controlled by traffic control signals exhibiting different colored lights successively, or with arrows, the following colors shall be used and shall indicate and apply to operators of vehicles and pedestrians as follows:
>
> ...
>
> (c) Red. 1. Vehicular traffic facing a red signal shall stop before entering the crosswalk on the near side of an intersection, or if none, then before entering the intersection or at such other point as may be indicated by a clearly visible sign or marking and shall remain standing until green or other signal permitting movement is shown.

Wis. Stat. § 346.37(1)(c)1. Although all vehicles are subject to the general requirement to stop at a red stop signal, Wis. Stat. § 346.03 grants authorized emergency vehicles a privilege to proceed through the red stop signal under certain specified circumstances.[12] The authorized emergency vehicle may "[p]roceed

---

[12] An "authorized emergency vehicle" is defined in the statutes to include "[p]rivately owned motor vehicles being used by deputy state fire marshals or by personnel of a full-time or part-time fire department or by members of a volunteer fire department while en route to a fire or on an emergency call pursuant to orders of their chief or other commanding officer." Wis. Stat. § 340.01(3)(d).

past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation" and meeting additional conditions set forth in other portions of the statute. Wis. Stat. § 346.03(2)(b).

¶46 In order to lawfully proceed through a red stop signal, the operator of the authorized emergency vehicle must give a "visual signal," which is defined as "at least one flashing, oscillating or rotating red light." Wis. Stat. § 346.03(3). Furthermore, it must also give an audible signal, which the statute defines as "a siren or exhaust whistle." Id.

¶47 Even if an operator of an authorized emergency vehicle gives both a visual and an audible signal, Wis. Stat. § 346.03(5) still requires that the operator drive "with due regard under the circumstances for the safety of all persons." Thus, in order to comply with Wis. Stat. § 346.03 and lawfully proceed through a red stop signal, an authorized emergency vehicle must slow down as may be necessary for safe operation, have given both a visual and an audible signal, and must have proceeded with due regard under the circumstances for the safety of all persons.

¶48 Here, Burditt by his own admission made a "poor decision" to proceed through the red stop signal, proceeding while giving a visual signal, but not while giving any audible signal. His actions are undisputedly contrary to the statutory requirements set forth in Wis. Stat. § 346.03(3). The only question is whether acting contrary to that "rule of the road" was ministerial.

23

¶49 This court considered whether acting contrary to the "rules of the road" may constitute an act contrary to a ministerial duty in Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996).  In that case, a law enforcement official engaged in a high-speed chase with another vehicle that failed to stop at a red stop signal.  Id. at 296.  The vehicle which was being pursued struck and killed a third-party driver. Id.  The deceased driver's estate sued the law enforcement official and the municipality for which he was employed alleging a cause of action sounding in negligence.  Id. at 297.

¶50 The municipality and the law enforcement official argued that they were immune from liability.[13]  Id.  The law enforcement officer argued that his alleged negligent initiation of the high-speed chase and his failure to terminate it were discretionary acts, and further argued that his alleged

---

[13] The municipality argued that Wis. Stat. § 346.03(6) set forth no ministerial duty such that failing to comply with a statutory mandate regarding policies and procedures for high-speed chases exposed it to liability.  Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 296-97, 550 N.W.2d 103 (1996).  The Cavanaugh court agreed that the municipality's failure to comply with Wis. Stat. § 346.03(6) constituted an act contrary to a ministerial duty.  Id. at 301.

In examining the statute, the court observed that although "the promulgation of guidelines in general involves a great amount of governmental discretion, § 346.03(6) makes the inclusion of certain parts of the policy promulgation ministerial."  Id.  The duty was ministerial because the statute mandated that law enforcement agencies consider "specific factors" that were "absolute, certain and imperative, involving merely the performance of a specific task."  Id. (quoting Kimps v. Hill, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996)).

operation of his vehicle contrary to Wis. Stat. § 346.03(5) requiring due regard under the circumstances for the safety of all persons did not mean that he had acted contrary to a ministerial duty. Id. at 315.

¶51 The Cavanaugh court determined that Wis. Stat. § 346.03(5) imposed only a discretionary duty under the circumstances of the case. Id. at 315-16. It noted that the officer's actions in initiating and continuing the high-speed chase were discretionary, distinguishing those acts from the physical operation of the vehicle, which it suggested may be ministerial in some circumstances. Id. at 316-18.

¶52 In Cavanaugh, it was the officer's decisions relating to the initiation and continuance of the high-speed chase that constituted the negligent conduct. Id. This court employed a similar analysis in Lodl, 253 Wis. 2d 323, ¶27, where it examined law enforcement regulations relating to the decision to direct traffic at an intersection. The Lodl court noted that the regulations did not require the officer to direct traffic in any given situation or otherwise remove officer discretion over the decision to undertake manual traffic control, and determined that they did not impose a ministerial duty. Id.

¶53 In this case, Burditt argues that, like the officer initiating and continuing the high-speed chase in Cavanaugh, his decision to enter the intersection was not ministerial. Likewise, he contends that his decision to proceed through the red stop signal is comparable to the law enforcement officer deciding whether to direct traffic in Lodl. However, unlike the

25

decisions to initiate and continue a high-speed chase in Cavanaugh and the decision to direct traffic in Lodl, Wis. Stat. § 346.03(3) directly governs Burditt's acts in proceeding through a red stop signal without an audible signal and satisfies all elements of a ministerial duty. Lister, 72 Wis. 2d at 301.

¶54 Burditt may proceed through a red stop signal only if his vehicle gives a visual and an audible signal. Wis. Stat. § 346.03(3). He did not give an audible signal, and therefore, he had no discretion to proceed through the red stop signal. The statute sets forth "absolute, certain and imperative," requirements concerning the "performance of a specific task," proceeding through the red stop signal, and it imposes and defines the "time, mode and occasion" for proceeding through the red stop signal "with such certainty that nothing remains for judgment or discretion." Lister, 72 Wis. 2d at 301.

¶55 Thus, Wis. Stat. § 346.03(3) imposed upon Burditt a ministerial duty to stop at the red stop signal. He failed to comply with that ministerial duty and now faces allegations of negligence premised on his failure to comply. He therefore falls within the ministerial duty exception to public officer immunity.

¶56 We further observe that as a supplement to Wis. Stat. § 346.03, the OFD set forth guidelines that appear to prohibit its members from proceeding through a red stop signal. The guidelines state that a personal vehicle must be driven with "emergency lights only," excluding audible signals from use.

26

Also under the "Use of Personal Vehicles" heading, the guidelines caution that "[n]o warning device will automatically grant you the right of way!" Although we need not determine whether the guidelines themselves established a ministerial duty, those directives only strengthen our conclusion.

¶57 Accordingly, we conclude that Burditt is not shielded by public officer immunity because he acted contrary to a ministerial duty. Because Burditt is not shielded by public officer immunity, summary judgment dismissing Burditt, the OFD, and their insurers is not appropriate.

V

¶58 In sum, we conclude that Burditt was acting within the scope of his employment when the collision occurred. Accordingly, he is within the class of individuals that may be shielded by public officer immunity.

¶59 However, we further conclude that Burditt is not entitled to public officer immunity because his acts in proceeding through the red stop signal without an audible signal violated a clear ministerial duty. He therefore falls within that exception to public officer immunity. The "rules of the road" statutes codified at Chapter 346 of the Wisconsin Statutes required Burditt to stop at the red stop signal because his vehicle lacked an audible signal. Because Burditt's acts fall within the ministerial duty exception to public officer immunity, he is not shielded by immunity and summary judgment is not appropriate. Accordingly, we reverse the court of appeals and remand for further proceedings.

27

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.