ANNETTE KINGSLAND ZIEGLER, J.
¶ 150. (dissenting. ) Emergency responders are permitted, to some *303 extent, to violate the rules of the road when responding to an emergency, and for good reason. See Wis. Stat. § 346.03(2).[1] I recognize that this privilege is not limitless, see Wis. Stat. § 346.03(3),[2] and I further recognize that an emergency responder must exercise "due regard under the circumstances for the safety of all persons." See § 346.03(5).[3] Under the facts of this case, however, the circuit court correctly concluded that Officer Mat- *304 sen, as an emergency responder, complied with her statutory obligations and is entitled to immunity.
¶ 151. The majority opinion's reasoning leads it to err because it disregards the standard set by the legislature in Wis. Stat. § 346.03; departs from our jurisprudence in regard to ministerial duty and discretionary act; disregards the standard we set in Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996); and ignores the circumstances under which Officer Matsen was acting. Accordingly, I respectfully dissent.
¶ 152. In the case at issue, Officer Matsen, acting as an emergency responder, had activated her lights and siren, thus complying with Wis. Stat. § 346.03(3). As she approached the intersection, Officer Matsen slowed her vehicle to 27 miles per hour, below the 30 miles per hour posted speed limit, thus complying with § 346.03(2)(b). While it is true that Legue and Officer Matsen were not visible to one another because a KFC blocked their view of each other, Officer Matsen had engaged full emergency response with her squad lights on and emergency siren sounding.
¶ 153. Legue was under an absolute obligation to give Officer Matsen the right of way. See Wis. Stat. § 346.19(1).[4] Legue had her radio on, her air conditioning on, and her windows closed. Legue did not see or hear Officer Matsen's vehicle. Legue entered the intersection traveling at 30 miles per hour and broadsided Officer Matsen's squad car. The jury found Legue and Officer Matsen equally negligent. The circuit court, *305 however, concluded that Officer Matsen, as an emergency responder, was entitled to immunity as she was acting in a discretionary capacity with due regard under the circumstances. I agree.
¶ 154. The majority opinion fails to interpret Wis. Stat. § 346.03(5) and concludes that Officer Matsen, as an emergency responder, is not entitled to immunity because she was not acting with discretionary authority, but instead failed in her "ministerial duty" to act with "due regard under the circumstances." Majority op., ¶¶ 131-33. In so doing, the majority opinion ignores the plain meaning of § 346.03(5) by affording virtually no consideration to the legislature's coupling of "due regard" with "under the circumstances." The majority opinion confuses discretionary decision-making that the legislature afforded to emergency responders with common law negligence principles.
¶ 155. I conclude that Wis. Stat. § 346.03 sets the test we are to apply. The statute illuminates what is meant by "due regard" when an authorized emergency vehicle enters an intersection against a red light. It provides that an operator of an emergency vehicle can proceed past a red light if it "slow[s] down as may be necessary for safe operation" and if it gives a "visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating,. . . and also an audible signal by means of a siren or exhaust whistle." Wis. Stat. § 346.03(2)(b) and (3). These requirements inform what regard is due.
¶ 156. Although the case at issue involved an officer traveling below the speed limit with her lights and siren engaged, entering an intersection against a red signal, the circumstances that can attend respond *306 ing to an emergency are incredibly diverse. For example the area through which the emergency responder passes and the time of day are part of the circumstances of an emergency response, e.g., is the emergency responder proceeding through a school district with children present or is he or she proceeding through a rural area at two o'clock in the morning? The type of emergency is also part of the circumstances, e.g., is the call for help a request for help for a feared heart attack or a call to stop a vehicle involved in a traffic violation?
¶ 157. "Due regard under the circumstances for the safety of all persons" is not fully described with particularity, nor could it be, because the circumstances will generally require the exercise of judgment by the emergency responder in ways that are particular to the circumstance with which the emergency responder is confronted. When the circumstances require such an exercise of judgment, it is the sine qua non of a discretionary decision.
¶ 158. Wisconsin Stat. § 346.03(6) also shows that exercising "due regard under the circumstances" often will require a judgment call. This section requires law enforcement agencies to provide written guidelines for officers to assist in their response to an emergency. Those guidelines are to consider "road conditions, density of population, severity of crime and necessity of pursuit by vehicle." § 346.03(6).
¶ 159. Of course, we expect emergency responders to use discretion under the circumstances to permit them to respond safely and promptly. Of course, we contemplate that they may not follow the rules of the road when so responding. In the mind of the responder and in the legislature's own language, the response will be balanced and measured in that the responder must use "due regard under the circumstances." This balanc *307 ing generally requires judgment calls that vary circumstance by circumstance. Such a balancing of continuingly changing factors in an emergency response then is not "absolute, certain and imperative" decision-making as the legislature would have set out if a ministerial duty were fully described.
¶ 160. To explain further, under our precedent, discretionary and ministerial duties are very different. Ministerial duties are " 'absolute, certain and imperative,' involving the 'performance of a specific task' that the law imposes and defines the 'time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" Brown v. Acuity, 2013 WI 60, ¶ 43, 348 Wis. 2d 603, 833 N.W.2d 96 (quoting Lister v. Board of Regents of University Wisconsin System, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).
¶ 161. A public officer, such as an emergency responder, is immune from suit for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions. Brown, 348 Wis. 2d 603, ¶ 41 (quoting Wis. Stat. § 893.80(4)). Acts that require the exercise of judgment are "discretionary" under the law. Lister, 72 Wis. 2d 282. A public officer discharging a "ministerial duty," by contrast, is not entitled to immunity. Kimps v. Hill, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996).[5]
¶ 162. As this court has consistently stated, "[a] public officer's duty is ministerial only when it is 'absolute, certain and imperative,' involving the 'perfor *308 manee of a specific task' that the law imposes and defines the 'time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.'" Brown, 348 Wis. 2d 603, ¶ 43 (quoting Lister, 72 Wis. 2d at 301).[6]
¶ 163. The majority opinion, however, departs from these longstanding principles. The majority fails to address how Officer Matsen's duty of due regard under the circumstances was " ’absolute, certain and imperative,'" such that she needed to perform only a" 'a specific task'" in order to meet her obligation. Id. (quoting Lister, 72 Wis. 2d at 301). Further, the majority does not explain how Officer Matsen's duty to exercise "due regard under the circumstances" in the case at issue imposed or defined the " 'time, mode and occasion'" for the performance of any such task " 'with such certainty that nothing remains for judgment or discretion.'" Id. (quoting Lister, 72 Wis. 2d at 301). Instead, the majority opinion concludes that an emergency responder is under a ministerial duty not to be involved in an accident. See majority op., ¶¶ 142-43. If an accident occurs, under the majority's standard, immunity is seemingly precluded.
¶ 164. Additionally, the majority opinion's analysis is inconsistent with this court's prior decision in *309 Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996). In Cavanaugh we concluded that Wis. Stat. "§ 346.03(5) does not preclude the defense of immunity for the discretionary acts of initiating or continuing a high-speed pursuit.’1 Id. at 317. In so doing, we distinguished between a discretionary decision to pursue a suspect, and a ministerial obligation to "physically operate" a vehicle with "due regard under the circumstances for the safety of all persons." Id. at 316-17. We also pointed out that a determination that the officer was negligent did not preclude the conclusion that he or she had acted with "due regard under the circumstances" and thereby was immune from liability. Id. at 319.[7]
¶ 165. In Cavanaugh the officer initiated and continued a high speed pursuit through a residential neighborhood. Id. at 296. The pursuit proceeded through solid red traffic signals at between 60 and 80 miles per hour, despite the fact that the suspect's illegal conduct merely involved a moving violation. Id. We nonetheless concluded that the officer was entitled to immunity, because the decision to engage in such a pursuit was discretionary and not ministerial. Id. at 316. We noted that "[ijnherent in the decision to pursue is the decision to speed." Id. The court applied the "due regard under the circumstances" standard and stated that "an officer may be negligent pursuant to [Wis. Stat.] § 346.03(5) for failing to physically operate his or her vehicle with due regard for the safety of others." Id. *310 at 317. The court, however, concluded that the officer's running of red lights, at 60 to 80 miles per hour, did not violate the "due regard under the circumstances" standard, and concluded that the officer was immune from liability.
¶ 166. It is difficult to reconcile the precedent of Cavanaugh with the majority opinion today. As in Cavanaugh, Officer Matsen was operating her vehicle in an emergency response. In Cavanaugh, the officer ran several red lights at between 60 and 80 miles per hour. By contrast, Officer Matsen entered an intersection against a red traffic signal, but did so at only 27 miles per hour. In Cavanaugh, the officer was acting in an effort to issue a traffic ticket. In the case at issue, Officer Matsen was responding to an emergency dispatch calling her to the scene of an accident.
¶ 167. As with Cavanaugh and that officer's decision to pursue, Officer Matsen exercised her judgment in deciding to proceed through the intersection, in response to an emergency. As with Cavanaugh, inherent in Officer Matsen's judgment is the exercise of discretion in deciding whether to proceed through the intersection with its risk of danger from cross-traffic. As with Cavanaugh, Officer Matsen did not maintain proper lookout.
¶ 168. Stated differently, the case at issue is controlled by Cavanaugh. If the officer in Cavanaugh was immune for his discretionary decision to run red lights at 60 to 80 miles per hour in order to chase a traffic offender, Officer Matsen also is immune for her discretionary decision to enter an intersection against a red signal at 27 miles per hour in order to respond to an emergency dispatch calling her to the scene of an accident.
*311 ¶ 169. The majority opinion dutifully recites the standard articulated in Cavanaugh but does not apply it, and instead opines that Cavanaugh is merely "instructive." Majority op., ¶¶ 100-16. The majority neither overrules nor reverses Cavanaugh, but it seriously undermines its value as precedent.[8]
¶ 170. Under the majority's analysis, I am concerned whether a plaintiff who is involved in an automobile accident with an emergency responder need plead only that the responder failed to exercise "due regard" in order to automatically defeat a claim of immunity. Such a principle is clearly at odds with one of the primary justifications for governmental immunity: "[t]he danger of influencing public officers in the performance of their functions by the threat of lawsuit." Kimps, 200 Wis. 2d 1, 9. It is also at odds with the plain meaning of Wis. Stat. § 346.03.
¶ 171. For the foregoing reasons, I respectfully dissent.
¶ 172. I am authorized to state that Justices ANN WALSH BRADLEY and PATIENCE DRAKE ROGGENSACK join this dissent.

 Wisconsin Stat. § 346.03(2) provides:
The operator of an authorized emergency vehicle may:
(a) Stop, stand or park, irrespective of the provisions of this chapter;
Ob) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
(c) Exceed the speed limit;
(d) Disregard regulations governing direction of movement or turning in specified directions.

 Wisconsin Stat. § 346.03(3) provides:
The exemption granted the operator of an authorized emergency vehicle by sub. (2) (a) applies only when the operator of the vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light except that the visual signal given by a police vehicle may be by means of a blue light and a red light which are flashing, oscillating or rotating, except as otherwise provided in sub. (4m). The exemptions granted by sub. (2)(b), (c) and (d) apply only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in sub. (4) or (4m).

 Wisconsin Stat. § 346.03(5) provides:
The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive or ride with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of his or her reckless disregard for the safety of others.

 Wisconsin Stat. § 346.19(1) provides in relevant part:
Upon the approach of any authorized emergency vehicle giving audible signal by siren the operator of a vehicle shall yield the right-of-way....

 While the majority opinion criticizes the distinction between "discretionary" acts, and "ministerial" duties, see majority op. ¶¶ 48-56, it nonetheless remains the law in Wisconsin. See Brown v. Acuity, 2013 WI 60, ¶¶ 42-43, 348 Wis. 2d 603, 833 N.W.2d 96.

 The majority opinion claims that some cases, specifically Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, have used a less stringent statement of the ministerial duty standard. See majority op., ¶ 49. This assertion, however, is incorrect. See Willow Creek, 235 Wis. 2d 409, ¶ 27 (stating that "[a] ministerial act, in contrast to an immune discretionary act, involves a duty that 'is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion'").

 In Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 550 N.W.2d 103 (1996), the jury found that the officer failed to maintain a proper lookout and this failure was causal in regard to Cavanaugh's injuries. Id. at 319. In the case before us, Officer Matsen was found by the jury to have failed to maintain a proper lookout.

 The only real difference between the two cases is that, in the case at issue, the officer herself was involved in the accident, while in Cavanaugh it was the suspect who struck another vehicle. This difference aptly illustrates how the majority's holding really works: officers are now under a ministerial duty not to be involved in traffic accidents.