# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP801 |
| COMPLETE TITLE: | Michael Engelhardt, Julieann Engelhardt, individually and as the Personal Representative of the Estate of Lily Engelhardt, |
| |           Plaintiffs-Respondents-Petitioners, |
| | State of Wisconsin Department of Health Services, |
| |           Involuntary-Plaintiff, |
| |     v. |
| | City of New Berlin, ABC Insurance Company and New Berlin Parks and Recreation Department, |
| |           Defendants-Appellants, |
| | Wiberg Aquatic Center f/k/a Wirth Aquatic Center and MNO Insurance Company, |
| |           Defendants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 378 Wis. 2d 740, 905 N.W.2d 843
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 4, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 24, 2018 |
| | |
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | J. Mac Davis |
| | |
| JUSTICES: | |
|   CONCURRED: | DALLET, J. concurs, joined by R.G. BRADLEY, J. & Kelly, J. (opinion filed) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-respondents-petitioners, there were briefs filed by *Christopher E. Rogers*, *Susan R. Tyndall*, and *Habush Habush & Rottier S.C.*, Madison. There was an oral argument by *Christopher E. Rogers.*

For the defendants-appellants, there was a brief filed by *Dustin T. Woehl* and *Kasdorf Lewis & Swietlik*, *SC*, Milwaukee. There was an oral argument by *Dustin T. Woehl.*

An amicus curiae brief was filed on behalf of Wisconsin Association for Justice by *William C. Gleisner*, *III*, and *Law Offices of William C. Gleisner*, *III*, Brookfield.

An amicus curiae brief was filed on behalf of League of Wisconsin Municipalities, Wisconsin Towns Association, and Wisconsin Counties Association by *Ted Waskowski*, *Kyle W. Engelke*, and *Stafford Rosenbaum*, *LLP*, Madison. There was an oral argument by *Kyle W. Engelke.*

**2019 WI 2**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2016AP801
(L.C. No.  2014CV1085)

STATE OF WISCONSIN  :  IN SUPREME COURT

**Michael Engelhardt, Julieann Engelhardt, individually and as the Personal Representative of the Estate of Lily Engelhardt,**

**Plaintiffs-Respondents-Petitioners,**

**State of Wisconsin Department of Health Services,**

**Involuntary-Plaintiff,**

**FILED**

v.

**JAN 4, 2019**

**City of New Berlin, ABC Insurance Company and New Berlin Parks and Recreation Department,**

Sheila T. Reiff
Clerk of Supreme Court

**Defendants-Appellants,**

**Wiberg Aquatic Center f/k/a Wirth Aquatic Center and MNO Insurance Company,**

**Defendants.**

REVIEW of a decision of the Court of Appeals.  *Reversed and cause remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals reversing the circuit court's denial of summary judgment to the City of New Berlin and the New Berlin Parks and Recreation Department (together, "New Berlin").[1]

¶2 Eight-year-old Lily Engelhardt attended a field trip to Brookfield's Wiberg Aquatic Center organized and run by the New Berlin Parks and Recreation Department. Lily could not swim. Lily's mother told Stuart Bell, the "Playground Coordinator" in charge of the field trip, that Lily could not swim. She questioned whether Lily should go on the trip at all. Bell responded that Lily would be safe because her swimming ability would be evaluated at the shallow end or zero depth area of the pool. Tragically, Lily drowned while staff and other children were changing in the locker rooms and proceeding to the pool deck.

¶3 Lily's parents filed suit against New Berlin and several other defendants, alleging negligence. New Berlin moved for summary judgment, arguing that it was immune from suit pursuant to the governmental immunity statute, Wis. Stat. § 893.80(4) (2011-12).[2] The circuit court denied New Berlin's summary judgment motion, and New Berlin moved for leave to

---

[1] Engelhardt v. City of New Berlin, No. 2016AP801, unpublished slip op. (Wis. Ct. App. Oct. 4, 2017).

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

appeal. The court of appeals granted New Berlin's motion and reversed the circuit court's denial of summary judgment to New Berlin.

¶4 We conclude that New Berlin is not entitled to the defense of governmental immunity. The known danger exception to governmental immunity applies in the instant case.

¶5 The known danger exception to governmental immunity, set forth in Cords v. Anderson, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), applies when an obviously hazardous situation known to the public officer or employee is of such force that a ministerial duty to correct the situation is created.[3] "[A] dangerous situation will be held to give rise to a ministerial duty only when 'there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion."[4]

¶6 In the instant case, the danger to which Lily was exposed at the Aquatic Center as an eight-year-old non-swimmer was compelling and self-evident. The obvious dangers involved

---

[3] Pries v. McMillon, 2010 WI 63, ¶23-24, 326 Wis. 2d 37, 784 N.W.2d 648; Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶32-40, 253 Wis. 2d 323, 646 N.W.2d 314; C.L. v. Olson, 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988); Voss ex rel. Harrison v. Elkhorn Area Sch. Dist., 2006 WI App 234, ¶¶14-18, 297 Wis. 2d 389, 724 N.W.2d 420.

[4] Lodl, 253 Wis. 2d 323, ¶38 (quoting C.L., 143 Wis. 2d at 717); see also Pries, 326 Wis. 2d 37, ¶24 (quoting C.L., 143 Wis. 2d at 715).

here resemble other obviously hazardous circumstances presented in Wisconsin cases that applied the known danger exception.[5] Drowning was a known danger.  Under the circumstances present here, Bell and other camp staff had a ministerial duty to give Lily a swim test before allowing her near the pool.  They did not perform this ministerial duty.

¶7   Because New Berlin is not entitled to the defense of governmental immunity, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this opinion.

I

¶8   The instant case reaches this court on summary judgment.  We recite the facts in the light most favorable to

---

[5] See, e.g., Cords v. Anderson, 80 Wis. 2d 525, 541, 259 N.W.2d 672 (1977) (park manager who knew that a trail was particularly dangerous at night had ministerial duty to "either place the signs warning the public of the dangerous conditions existing on the upper trail or to advise his superiors" of the hazardous condition); Voss, 297 Wis. 2d 389, ¶¶19-20 (teacher who witnessed students stumbling and falling while wearing "fatal vision goggles" in classroom full of desks and hard tile floor had ministerial duty to "stop the activity the way it was presently conceived"); Pries, 326 Wis. 2d 37, ¶¶43-47 (Abrahamson, C.J., concurring) (applying known danger exception where supervisor, aware of the dangers associated with heavy pieces of solid steel horse stalls that are unchained during the process of disassembly, "was in a position as supervisor to do something about the danger[,] and he failed to do anything about it——worse, he jumped onto the stalls").

the Engelhardts, the parties opposing summary judgment, and draw all reasonable inferences from those facts in their favor.[6]

¶9 On Monday, July 2, 2012, eight-year-old Lily Engelhardt started her first day at a summer day camp organized and run by the New Berlin Parks and Recreation Department. On her second day of camp, the camp was scheduled to take a field trip to Brookfield's Wiberg Aquatic Center.

¶10 Lily could not swim. Despite having taken three sessions of beginner swimming lessons through the New Berlin Parks and Recreation Department, Lily had not moved on to the next level and was otherwise not making much progress. Other than these three sessions of swimming lessons, Lily had very little experience with swimming or being in or around pools.

¶11 The field trip to the Aquatic Center was optional. When Lily's mother received a permission slip upon picking Lily up after her first day, she questioned whether Lily should go on the field trip given that Lily could not swim.

¶12 Lily's mother communicated her concerns to Stuart Bell, the "Playground Coordinator" in charge of the day camp program. She told Bell that Lily could not swim and asked whether Lily should go on the field trip to the Aquatic Center. Bell responded that it would be all right for Lily to attend the

---

[6] *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶19, 291 Wis. 2d 259, 715 N.W.2d 620; *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).

field trip because Lily would be restricted to the splash pad area of the Aquatic Center.

¶13 In his deposition, Bell testified that New Berlin gave swim tests to all new campers in order to test their swimming ability. In fact, when Lily's mother told Bell that her daughter could not swim, Bell told her that Lily would be safe because her swimming ability would be evaluated at the pool. However, Lily was not given a swim test, and Bell told no other staff members that Lily could not swim.

¶14 The Aquatic Center was very busy the day of the field trip. Upon arriving at the Aquatic Center, 77 campers were divided by gender and went into the locker rooms to change. Although new campers who had not been given a swim test were instructed to find a leader before getting into the pool, they were not directed to go to any specific location to find a leader, and no leaders were stationed at the locker room door to direct them.

¶15 At some point when most of the children were in the water but before all staff members were out of the locker room, lifeguards had already discovered a distressed Lily in the pool. Despite the efforts of lifeguards and other medical personnel, Lily died as a result of this incident.

¶16 Lily's parents sued New Berlin and several other defendants, alleging negligence. New Berlin moved for summary judgment, arguing that it was immune from suit pursuant to Wis. Stat. § 893.80(4). The circuit court determined that an issue of fact precluded New Berlin's immunity as a matter of law. New

6

Berlin moved for leave to appeal.  The motion was granted by the court of appeals.

¶17  The court of appeals reversed the circuit court, concluding that New Berlin was immune from suit under Wis. Stat. § 893.80(4)[7] and was entitled to summary judgment.

¶18  The court of appeals reasoned that none of the camp documents highlighted by the Engelhardts (specifically, the camp's information packet, staff guidelines, and staff handbook) created ministerial duties and that the known danger exception to governmental immunity did not apply.

II

¶19  The issue presented is whether New Berlin is entitled to governmental immunity or whether an exception to governmental immunity applies.  "Whether an exception to immunity applies requires us to determine the proper scope of the common law doctrine of governmental immunity; that is a question of law that we review de novo without deference to the circuit court or

---

[7] Wisconsin Stat. § 893.80(4) provides:

No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

court of appeals, but benefitting from the analysis of each court."[8]

### III

### A

¶20 We begin our analysis with the text of Wis. Stat. § 893.80(4), the governmental immunity statute.[9]

¶21 In relevant part, Wis. Stat. § 893.80(4) immunizes municipalities from liability arising out of "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

¶22 For over 40 years, this court has consistently interpreted this particular statutory language to include any acts that involve the exercise of discretion.[10] Immunizing government officials from liability arising out of their discretionary acts "is based largely upon public policy considerations that spring from the interest in protecting the public purse and a preference for political rather than judicial

---

[8] Pries, 326 Wis. 2d 37, ¶19 (citing Kimps v. Hill, 200 Wis. 2d 1, 8, 546 N.W.2d 151 (1996)); see also Lodl, 253 Wis. 2d 323, ¶17 (citing Kierstyn v. Racine Unified Sch. Dist., 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999)).

[9] State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

[10] Lifer v. Raymond, 80 Wis. 2d 503, 511-12, 259 N.W.2d 537 (1977); see also Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693 (concluding that this particular statutory language is "synonymous with discretionary acts").

redress for the actions of public officers."[11] We highlighted these important policy considerations in Lister v. Board of Regents, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976), as follows:

> (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.[12]

¶23 Despite decades of legislative silence with regard to this court's long-standing interpretation of the governmental immunity statute, the Engelhardts invite this court to reverse course on the past 40 years of Wisconsin jurisprudence interpreting the governmental immunity statute.[13] They urge the court to adopt an interpretation of the statute that would have the effect of exposing municipalities to liability in a far greater number of circumstances.

---

[11] Lodl, 253 Wis. 2d 323, ¶23 (citing Kierstyn, 228 Wis. 2d at 89-90).

[12] See also Lodl, 253 Wis. 2d 323, ¶23 (quoting Lister v. Board of Regents, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976)).

[13] Our interpretation of the particular statutory language at issue has stood undisturbed for over 40 years. The distinction between discretionary and ministerial acts is over 60 years old. See Meyer v. Carman, 271 Wis. 329, 331-33, 73 N.W.2d 514 (1955).

¶24 We decline the Engelhardts' invitation. Decades of jurisprudence cannot, and should not, be discarded casually. "'This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law.'"[14] The doctrine of stare decisis is vital to "the evenhanded, predictable, and consistent development of legal principles[.]"[15] It "fosters reliance on judicial decisions[] and contributes to the actual and perceived integrity of the judicial process."[16]

¶25 The doctrine of stare decisis is a particularly important concern "where a court has authoritatively interpreted a statute[.]"[17] This is because "the legislature remains free to alter its construction" if it believes we interpreted the statute incorrectly or in a way that results in unintended or undesirable consequences.[18]

¶26 The legislature has not overturned our interpretation of the statute. Although it is not conclusive of legislative

---

[14] Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶41, 281 Wis. 2d 300, 697 N.W.2d 417 (quoting Johnson Controls v. Employers Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257).

[15] Payne v. Tennessee, 501 U.S. 808, 827 (1991); Romanshek, 281 Wis. 2d 300, ¶43; Johnson Controls, 264 Wis. 2d 60, ¶95.

[16] Payne, 501 U.S. at 827; Romanshek, 281 Wis. 2d 300, ¶43; Johnson Controls, 264 Wis. 2d 60, ¶95.

[17] Romanshek, 281 Wis. 2d 300, ¶45 (citing Hilton v. S.C. Pub. Rys. Comm'n, 502 U.S. 197, 202 (1991)).

[18] Romanshek, 281 Wis. 2d 300, ¶45 (citing Hilton, 502 U.S. at 202).

intent, we note that the legislature has on numerous occasions revised and recreated Wis. Stat. § 893.80 without altering the statutory language in response to this court's interpretation of the statute.[19] Indeed, the legislature repealed and recreated the governmental immunity statute in 1977,[20] but it did not see fit to "correct" the court's understanding of governmental immunity for discretionary acts as discussed in Lister, a case decided just one year earlier.[21]

¶27 If we adopt the interpretation of Wis. Stat. § 893.80(4) urged by the Engelhardts, we would effectively pull the rug out from under municipalities and other governmental entities that have managed their affairs relying upon our decades-old interpretation of the governmental immunity statute. Such a result would be especially jarring to the public and legal community given that just two years ago, we rejected the specific interpretation of the statute that the Engelhardts urge us to adopt today.[22]

---

[19] Romanshek, 281 Wis. 2d 300, ¶52 ("Legislative inaction following judicial construction of a statute, while not conclusive, evinces legislative approval of the interpretation.") (quoted source omitted).

[20] See 1977 Wis. Act 285, § 11.

[21] Lister, 72 Wis. 2d at 300-02.

[22] See generally Melchert v. Pro Elec. Contractors, 2017 WI 30, ¶¶53-65, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting).

¶28 It is unwise for a court to frequently call into question existing and long-standing law. Doing so gives the impression that the decision to overturn prior cases is "undertaken merely because the composition of the court has changed."[23] "When existing law is open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results."[24]

B

¶29 Wisconsin Stat. § 893.80(4) provides no immunity against liability associated with several categories of acts:

> There is no immunity against liability associated with: 1) the performance of ministerial duties imposed by law; 2) known and compelling dangers that give rise to ministerial duties on the part of public officers or employees; 3) acts involving medical discretion; and 4) acts that are malicious, willful and intentional.[25]

¶30 These exceptions "represent[] a judicial balance struck between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.'"[26]

---

[23] Johnson Controls, 264 Wis. 2d 60, ¶95.

[24] Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266 (internal quotation marks omitted) (quoting State v. Outagamie Cty. Bd. of Adjustment, 2001 WI 78, ¶29, 244 Wis. 2d 613, 628 N.W.2d 376); see also Romanshek, 281 Wis. 2d 300, ¶42; Johnson Controls, 264 Wis. 2d 60, ¶95.

[25] Lodl, 253 Wis. 2d 323, ¶24 (citing Willow Creek Ranch, 235 Wis. 2d 409, ¶25).

[26] C.L., 143 Wis. 2d at 710 (quoting Lister, 72 Wis. 2d at 300).

12

¶31 In the instant case, the Engelhardts invoke the "ministerial duty" and "known danger" exceptions to governmental immunity. These two exceptions are related——they "overlap to an extent, inasmuch as they both require the identification of a ministerial duty."[27] Thus, a brief discussion of ministerial duties is relevant to the application of both exceptions.

¶32 In Wisconsin, the test for determining whether a duty is ministerial or discretionary was articulated in Meyer v. Carman, 271 Wis. 2d 329, 332, 73 N.W.2d 514 (1955). We have described the test for ministerial duties as follows:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.[28]

---

[27] Pries, 326 Wis. 2d 37, ¶24.

[28] Lister, 72 Wis. 2d at 301; see also Pries, 326 Wis. 2d 37, ¶22.

The difference between a ministerial duty for purposes of the "ministerial duty" exception to governmental immunity and a ministerial duty for purposes of the "known danger" exception has been described as follows:

> [A] ministerial duty for purposes of the ministerial duty exception is imposed by law or policy and performance is required in a time, manner, and under conditions where the officer does not exercise discretion or judgment. In contrast, the ministerial duty for purposes of the known danger exception arises not from a written law or policy, but when an obviously dangerous situation presents itself.

Pries, 326 Wis. 2d 37, ¶24.

13

¶33 We have explained that "circumstances may give rise to such a certain duty, where . . . the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act."[29]

¶34 If either the "ministerial duty" exception or the "known danger" exception applies, New Berlin is not entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).

IV

¶35 Having established the proper legal framework, we now apply that framework to the facts of the case. We conclude that the known danger exception applies, and therefore, New Berlin is not entitled to governmental immunity.

¶36 The known danger exception was first established by this court in Cords v. Anderson, 80 Wis. 2d 525, 259 N.W.2d 672 (1977). The Cords case involved an accident where hikers, legally accessing a park hiking trail at night, fell into a deep gorge located on a part of the trail known by the park manager to be particularly hazardous at night.[30]

---

[29] C.L., 143 Wis. 2d at 715 (citing Domino v. Walworth Cty., 118 Wis. 2d 488, 347 N.W.2d 917 (Ct. App. 1984)); see also Pries, 326 Wis. 2d 37, ¶24.

[30] Cords, 80 Wis. 2d at 532-35.

In Cords, we described the topography of the trail in great detail, and we do not repeat that description here. We note, however, that the hazardous condition on the trail was a cutback "where one misstep of a foot in a southerly direction would cause an uninterrupted twenty foot slide down a sharp incline to a direct dropoff of approximately eighty feet to the rock bottom of the gorge." Cords, 80 Wis. 2d at 532.

14

¶37 The issue was whether the park manager was entitled to immunity from the hikers' negligence suit.

¶38 We concluded that the park manager "had an absolute, certain, or imperative duty to either place the signs warning the public of the dangerous conditions existing on the upper trail or to advise his superiors" of the hazardous conditions.[31]

¶39 We explained: "[The park manager] knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty."[32] Based on the facts presented in Cords, the court held "that the duty to either place warning signs or advise superiors of the conditions is . . . a duty so clear and so absolute that it falls within the definition of a ministerial duty."[33]

¶40 The court of appeals applied the known danger exception in Voss ex rel. Harrison v. Elkhorn Area School District, 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420. In Voss, a teacher was instructing the class regarding the dangers of driving after having consumed alcohol.[34] The teacher had the students wear "fatal vision goggles" which, when worn, replicated a .10 blood alcohol concentration.[35] The teacher

---

[31] Id. at 541.

[32] Id.

[33] Id. at 542.

[34] Voss, 297 Wis. 2d 389, ¶2.

[35] Id.

15

arranged the desks in the classroom into three straight rows and instructed three students wearing goggles to walk in between the rows and go after a tennis ball thrown by the teacher.[36]    "[T]he purpose of this particular exercise was to divert the student's attention away from an otherwise simple task (walking down an aisle of desks) and then show how the addition of another simple task (going after a ball) makes the performance of both tasks difficult when a person is under the influence of alcohol."[37]

¶41  The teacher was aware of the risks inherent in the exercise.    Although the potential for danger was obvious, the teacher had also witnessed first-hand a student who bumped into a desk and hit her knees against the floor while performing this exercise.[38]    The incident giving rise to the lawsuit in Voss occurred when a student caught her foot on the leg of a desk, tripped, and hit her mouth on the top of the desk, causing severe injuries to her teeth.[39]

¶42  The student's parents sued the school district claiming negligence, and the school district argued that it was entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).[40]

---

[36] Id., ¶4.

[37] Id., ¶5.

[38] Id., ¶¶5-6.

[39] Id., ¶¶6-9.

[40] Id., ¶10.

¶43 The court of appeals determined that the school district was not entitled to governmental immunity because the known danger exception applied to the facts of the case.[41]

¶44 The court of appeals stated that, like the facts presented in Cords, the facts presented in Voss represented an "example[] of conditions that are nearly certain to cause injury if not corrected, or in other words, are 'accidents waiting to happen.'"[42] The court of appeals explained:

The teacher knew of the perils of conducting the exercise. The fatal vision goggles distort vision and impair depth perception and sense of balance. The teacher testified that students using the goggles would lose their balance and slip or stumble while doing the simple tasks he had them perform. In fact, that was the entire purpose of the exercise——to show students how difficult a simple task becomes when alcohol is consumed. The teacher, however, chose to conduct the exercise within the confines of a classroom with a hard tile floor and in between aisles of desks made of steel or aluminum and wood. Despite these obvious hazards, the teacher took no precautions to minimize the risk of injury.

. . . .

[T]he circumstances presented on the day of Voss' injury admitted of only one response on behalf of the teacher——stop the activity the way it was presently conceived. Before Voss tripped and fell, some of the male students had collided with each other and slid on the floor and one other student had stumbled and fallen to her knees. At that point, given the physical layout of the room and the desks made of steel or aluminum and wood, the manner in which the students were stumbling and falling and the very

---

[41] Id., ¶23.

[42] Id., ¶19.

17

nature of the effects of the goggles themselves, it should have been self-evident to the teacher that the activity was hazardous and the only option was to put an end to it. Accordingly, the known and present danger exception to immunity applies.[43]

¶45 Though not decided on the basis of the known danger exception, Pries v. McMillon, 2010 WI 63, 326 Wis. 2d 37, 784 N.W.2d 648, is also instructive.

¶46 In Pries, a group of workers were disassembling a steel horse stall at the state fair.[44] The stalls were made up of four steel pieces: a front, back, and two sides.[45] Each piece measured approximately 10 feet high, 10 feet wide, and four inches thick, and weighed approximately 200 pounds.[46] When assembled, the pieces were secured to each other with pins, and the side and back pieces were secured to a wall with chains.[47]

¶47 At the time of the accident giving rise to the lawsuit, a two-page written procedure was in effect setting forth the proper method of disassembling horse stalls. The supervisor who was in charge of the workers was aware of the written instructions and that they stated, in relevant part: "Always have someone holding up the piece that you are taking down."[48] The supervisor also knew that if the stalls were not

---

[43] Id., ¶¶19-20.

[44] Pries, 326 Wis. 2d 37, ¶4.

[45] Id., ¶5.

[46] Id.

[47] Id.

[48] Id., ¶9.

18

disassembled in an appropriate manner, they posed a risk of injury.[49] "[The supervisor] confirmed that he knew that if the chains had been removed from the back stall pieces, the stalls could fall and injure people standing nearby, particularly if someone jumped up on the stalls."[50]

¶48 At one point while disassembling a stall, the plaintiff and two other workers struggled to dislodge a stall piece that was stuck to another piece.[51] The supervisor, a full-time employee of the Wisconsin State Fair Park, observed that the chains responsible for securing the pieces had been removed and commented that they should not have been.[52] Despite that, the supervisor jumped up on and straddled the stall next to the piece that the workers were trying to free and started jerking it up and down with his hands.[53] Immediately after, there was a devastating accident in which unchained stall pieces started falling in a domino effect on the workers, striking all three of them.[54]

¶49 The plaintiff sued the supervisor and State Fair Park claiming negligence, and the supervisor argued that he was

---

[49] Id., ¶11.

[50] Id.

[51] Id., ¶6.

[52] Id.

[53] Id.

[54] Id.

entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).[55]

¶50 The Pries court held that the ministerial duty exception to governmental immunity applied because the written instructions "establish[ed] a ministerial duty that [the supervisor] then violated when he jumped on and shook the stuck stall knowing that 'the chains were undone' and knowing of the instructions to '[a]lways have someone holding up the piece that you are taking down.'"[56]

¶51 Although the parties in Pries briefed the application of the known danger exception, the Pries court concluded that "[b]ecause . . . the ministerial duty exception applies here, it is not necessary for us to determine whether the known danger exception also applies."[57]

¶52 Writing separately, one justice analyzed the known danger exception and concluded that it applied to the facts of the case:

> The pieces of solid steel horse stalls weigh[ed] 200 pounds, [were] typically handled by no less than four workers, and need[ed] to be constantly supported during disassembly. Disassembly here [was] an "accident waiting to happen" and gives rise to an absolute duty to take steps to prevent the steel horse stall pieces from falling. [The supervisor] knew the unchained steel stall pieces were dangerous; he was in a position as supervisor to do something about the

[55] Id., ¶¶7, 14-16.

[56] Id., ¶33.

[57] Id., ¶41.

20

danger; and he failed to do anything about it——worse, he jumped onto the stalls. In my view, he thereby breached a duty that was "absolute, certain, and imperative" following the analysis of the known danger cases.[58]

¶53 Our review of Cords, Voss, and Pries leads us to the conclusion that the known danger exception applies in the instant case, and as a consequence, New Berlin is not entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).

¶54 As the facts somberly illustrate, the danger associated with bringing a young child who cannot swim to a busy water park along with 76 other children is apparent. A young child can quickly become distressed in deep water if he or she cannot swim. Serious injury or death can occur very suddenly, so it is paramount that precautions be taken to lessen those risks. The nature of the danger here was immediate, compelling, and self-evident. The danger was like hiking a trail with a treacherous cutback along a steep gorge at night, attempting to go after a tennis ball in a classroom full of desks while wearing goggles that simulate a .10 BAC, and jumping on an unchained 200-pound solid steel piece of a horse stall. The danger was "of such force" that Bell had no discretion not to act——the circumstances of the situation imposed upon him a ministerial duty to test Lily's swimming ability before she got into the water.[59]

---

[58] Id., ¶46 (Abrahamson, C.J., concurring).

[59] See C.L., 143 Wis. 2d at 715.

21

¶55 Bell was aware that Lily could not swim.  Lily's mother told him that Lily could not swim before the field trip to the Aquatic Center, but Bell did nothing with this information.  He did not tell any other staff member that Lily could not swim.  He did nothing to ensure that Lily's swimming ability would be tested before allowing her to be without direct supervision.  In short, Bell was aware of the danger, he was in a position as the Playground Coordinator to do something about it, and he failed to do anything about it.[60]

¶56 The parties spend a great deal of effort questioning whether Bell and other camp staff had a ministerial duty to directly supervise Lily and keep an eye on her at all times before administering a swim test.

¶57 Properly framed, the issue in the instant case is whether the circumstances of the situation created a ministerial duty to test Lily's swimming ability before she got into the pool.  We conclude that they did.  The Engelhardts' theory of liability is that New Berlin's procedure for making sure that new campers like Lily did not get into the water without first having a swim test was ineffective and constitutes negligence.  New Berlin negligently performed (or, as a result of its negligence, did not perform) its ministerial duty to administer a swim test before Lily got into the water, and governmental

---

[60] Cords, 80 Wis. 2d at 541.

immunity is not available "for the negligent performance of a purely ministerial duty."[61]

¶58 Before ending, we note that there might have been a number of ways in which New Berlin could have discharged its ministerial duty to test Lily's swimming ability before she got in the water. For example, new campers who had not yet taken a swim test, including Lily, could have been grouped together by gender and assigned a specific counselor to supervise them until a swim test was performed. Alternatively, camp staff could have been stationed at the exit of each locker room to fit each new camper who had not yet taken a swim test, including Lily, with a life jacket.

¶59 In Cords, we specifically enumerated two different ways in which the park manager could have fulfilled the ministerial duty arising out of the circumstances of that particular case.[62] That there were at least two possible ways for the park manager to fulfill his ministerial duty did not affect the resolution of the case. "[S]imply allowing for the exercise of discretion does not suffice to bring the actions under the blanket of immunity provided by sec. 893.80(4), Stats., when the facts or the allegations reveal a duty so clear

---

[61] Pries, 326 Wis. 2d 37, ¶22 (quoting Kimps, 200 Wis. 2d at 10).

[62] See Cords, 80 Wis. 2d at 541 (concluding that the park manager had a duty to either place signs warning the public of the dangerous condition or advise his superiors of the dangerous condition).

and absolute that it falls within the concept of a ministerial duty."[63]

¶60 Similarly, that there may have been several possible ways in which New Berlin could have fulfilled its ministerial duty does not affect the resolution of the instant case. Rather, it is sufficient for us to conclude that a ministerial duty was created by the obviously hazardous circumstances presented in the instant case, and as a result, New Berlin is not entitled to governmental immunity from the Engelhardts' negligence suit.

¶61 Accordingly, we conclude that the known danger exception applies.

¶62 Because we conclude that the known danger exception to governmental immunity applies, we need not and do not address whether any of the written documents highlighted by the Engelhardts created a ministerial duty for purposes of the ministerial duty exception.

V

¶63 We conclude that the known danger exception applies in the instant case, and as a result, New Berlin is not entitled to governmental immunity pursuant to Wis. Stat. § 893.80(4).

---

[63] C.L., 143 Wis. 2d at 715 n.8 (quoting Domino, 118 Wis. 2d at 491-93); see also Pries, 326 Wis. 2d 37, ¶45 n.4 (Abrahamson, C.J., concurring) (quoting Domino, 118 Wis. 2d at 491).

¶64 Accordingly, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶65 REBECCA FRANK DALLET, J. *(concurring).* This case is about whether the City of New Berlin and the New Berlin Parks and Recreation Department (together, "New Berlin") are entitled to immunity for the negligent acts of their camp staff which resulted in the drowning of eight-year-old Lily. While the majority opinion chooses to expand the narrow exception to immunity carved out for a "known danger," I apply the plain language set forth in Wis. Stat. § 893.80(4) to reach the same result.

¶66 After adopting and applying governmental immunity in Wisconsin for almost a century, in 1962 this court boldly abrogated governmental immunity, declaring it "ancient and fallacious," "archaic," and "unjust, inequitable, and patently unfair." Holytz v. City of Milwaukee, 17 Wis. 2d 26, 33-35, 115 N.W.2d 618 (1962). In the landmark Holytz decision, this court provided clarity in its statement that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability——the exception is immunity." Id. at 39. An exception to immunity was carved out for a governmental body in the exercise of its "legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40.

¶67 The following year, the legislature signaled its approval of the Holytz decision with the enactment of Wis. Stat. § 893.80(4) which provides, in pertinent part, that "[n]o suit may be brought against any . . . governmental subdivision or any agency thereof . . . or against its officers, officials, agents or employees for acts done in the exercise of legislative,

1

quasi-legislative, judicial, or quasi-judicial functions."[1] The language of Holytz and § 893.80(4) advance the original purpose of governmental immunity, which is "to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place." Legue v. City of Racine, 2014 WI 92, ¶40, 357 Wis. 2d 250, 849 N.W.2d 837.

¶68 Although governmental immunity was intended to be reserved only for government agents or employees in the exercise of their legislative, quasi-legislative, judicial, or quasi-judicial functions, this court soon revived the pre-Holytz distinction between "ministerial duties" and "discretionary acts." See Cords v. Ehly, 62 Wis. 2d 31, 39-41, 214 N.W.2d 432 (1974). The exercise of a "discretionary act," subject to immunity, is now synonymous with the exercise of a legislative, quasi-legislative, judicial, and quasi-judicial function. Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693.

¶69 The artificial distinction between a ministerial duty and discretionary act is impracticable and the resulting decisions regarding the limits of governmental immunity have been labeled "jurisprudential chaos." Scott v. Savers Property

---

[1] The legislature enacted Wis. Stat. § 331.43, which later became Wis. Stat. § 895.43, which is now Wis. Stat. § 893.80. See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 2005 WI 8, ¶¶53-54 & n.13, 277 Wis. 2d 635, 691 N.W.2d 658. However, the pertinent language of the statute has remained unchanged.

and Cas. Ins. Co., 2003 WI 60, ¶58, 262 Wis. 2d 127, 663 N.W.2d 715 (Abrahamson, C.J., concurring).[2] Every act has a discretionary component, such that "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." Id., ¶136 (Prosser, J., dissenting)(citations omitted).

¶70 Far from creating an "evenhanded, predictable, and consistent development of legal principles,"[3] the basis for adherence to stare decisis, the determination that an act is sufficiently discretionary so as to invoke immunity has appeared almost random at times. See, e.g., Lodl v. Progressive N. Ins. Co., 2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314 (holding that although the statute at issue described the procedures the officer should use in deciding to manually control traffic, the

---

[2] While the majority opinion paints a picture of the jurisprudence surrounding governmental immunity as being clear and consistent, quite the contrary is true. See Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶135, 350 Wis. 2d 554, 835 N.W.2d 160 (Abrahamson, C.J., dissenting) ("Government immunity and liability is a complicated area of jurisprudence with 50 years of Wisconsin case law precedent that is not always easy to explain or justify."). Criticism of this court's interpretation of Wis. Stat. § 893.80(4) is well documented. See, e.g., Melchert v. Pro Electric Contractors, 2017 WI 30, ¶57, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting); see also Nicholas J. Bullard, Comment, Pushing the Reset Button on Wisconsin's Governmental Immunity Doctrine, 2014 Wis. L. Rev. 801.

[3] Payne v. Tennessee, 501 U.S. 808, 827 (1991); Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶43, 281 Wis. 2d 300, 697 N.W.2d 417; Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶95, 264 Wis. 2d 60, 665 N.W.2d 257.

officer had discretion as to when to perform manual traffic control); Scott, 262 Wis. 2d 127 (holding that a guidance counselor's act of wrongly advising a student that his classes were approved by the NCAA was discretionary, despite the guidance counselor's receipt of clear and unambiguous forms detailing approved and unapproved NCAA courses); Brown v. Acuity, 2013 WI 60, 348 Wis. 2d 603, 833 N.W.2d 96 (holding that a firefighter was liable for running through a red stop signal with his emergency lights activated, but without an audible signal, because he violated a clear ministerial duty). The result of this court's adoption of the pre-Holytz, pre-Wis. Stat. § 893.80(4) language conditioning immunity on the performance of discretionary acts has been a return to governmental immunity as the rule and liability as the exception.

## I.   THE NARROW KNOWN DANGER EXCEPTION DOES NOT APPLY

¶71  In this case, instead of analyzing whether New Berlin camp staff had a ministerial duty by operation of law, regulation, or governmental policy, the majority opinion concludes that a ministerial duty arose by virtue of a "known danger."  To date, the known danger exception has been limited to situations where "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion."  C.L. v. Olson, 143 Wis. 2d 701, 717, 422 N.W.2d 614 (1988).  "[T]he danger must be compelling enough that a self-evident, particularized, and non-

4

discretionary municipal action is required. The focus is on the specific act the public officer or official is alleged to have negligently performed or omitted." Lodl, 253 Wis. 2d 323, ¶40. The known danger exception has been applied in cases where the potential of danger was high and the act required to prevent the danger was clear. See, e.g., Voss ex rel. Harrison v. Elkhorn Area School Dist., 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420 (known danger exception applied where the hazards of conducting an exercise within the confines of a classroom with a hard tile floor and full of desks was apparent after other students had previously collided with each other and fallen); but cf. C.L., 143 Wis. 2d at 723 (known danger exception did not apply because the potential danger of a parolee attacking a victim did not rise to "such a degree of probability" that the parole agent was deprived of the discretion regarding the manner and level of parole supervision required).

¶72 In order to apply the known danger exception to the case at hand, the majority opinion must necessarily expand the exception to apply in situations where the danger was not necessarily imminent and where there was discretion in how to respond to the potential danger. The majority opinion concludes that the known, compelling danger to Lily as a non-swimmer was that she would drown and that the ministerial duty that arose from the compelling danger was the administration of a swim test. Majority op., ¶6. The known danger exception as previously defined does not apply to the facts of this case.

5

¶73 First, the danger involved was not compelling and of such force to give rise to a duty to act. Lily's presence at the Wiberg Aquatic Center alone did not present a compelling danger. Stuart Bell, the Playground Coordinator, had taken campers to the Aquatic Center every Tuesday in the summer for twelve years. During that time there were only two incidents in which participants needed lifeguard assistance, with neither incident resulting in injury. On the date of the incident, Aquatic Center lifeguards were on duty, New Berlin camp staff was present, and procedures were in place to allow non-swimmers like Lily to safely enjoy the trip to the Aquatic Center. No one saw Lily near the pool which could have created a compelling danger. As noted by the court of appeals, "[a]ware that Lily could not swim, if Bell had seen her walking right along the edge of a deep area of the pool, this case would be akin to Voss in that a situation would exist that required Bell to take immediate action to stop an 'accident waiting to happen.'" Engelhardt v. City of New Berlin, No. 2016AP801, unpublished slip op., ¶33 (Wis. Ct. App. Oct. 4, 2017). While in hindsight Lily's drowning can be said to be an "accident waiting to happen," most cases alleging negligence fit that broad definition.

¶74 Second, there was discretion as to the mode of response. The majority opinion defines the immediate action required to prevent the danger of Lily drowning as a swim test. A swim test would have revealed that Lily could not swim, a fact already known by Bell based on a conversation that he had with

6

Lily's mother the day before the incident. Lily's mother testified at her deposition that after she informed Bell that Lily could not swim, Bell's response was: "That's okay. She can stay in the splash pad area." There were multiple ways that the New Berlin camp staff could have kept Lily safe at the Aquatic Center, such as keeping her at the shallow end of the pool or in the splash pad area, alerting the lifeguards and other camp staff of her inability to swim, having her wear a lifejacket and, most importantly, supervising Lily. There was no one time, mode or occasion for performance to alleviate the risk of Lily drowning. The facts of this case did not present a known, present and compelling danger and there was no "self-evident, particularized, and nondiscretionary" response. Lodl, 253 Wis. 2d 323, ¶40. The known danger exception does not apply.

## II. APPLICATION OF WIS. STAT. § 893.80(4)

¶75 Instead of expanding the known danger exception to fit the facts of this case, allowing for broader future use of what was intended to be a "narrow, judicially-created exception," this court should return to an interpretation that is tethered to the text of Wis. Stat. § 893.80(4). Lodl, 253 Wis. 2d 323, ¶4. Returning to the text of § 893.80(4) would not only result in coherency in our jurisprudence, it would also allow redress

to innocent victims for wrongs committed by the government.[4] See Melchert v. Pro Electric Contractors, 2017 WI 30, ¶¶63-65, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting).

¶76 This court recently acknowledged that Wis. Stat. § 893.80(4) "is best honored by applying the legislature's chosen plain language, rather than a judicial distillation thereof." Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶35, 350 Wis. 2d 509, 835 N.W.2d 226. This court has been called upon in the past to revisit § 893.80, yet we have been reluctant to do so. See Melchert, 374 Wis. 2d 439, ¶¶52-65 (R.G. Bradley, J., dissenting); Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶136, 350 Wis. 2d 554, 835 N.W.2d 160 (Abrahamson, C.J., dissenting); Scott, 262 Wis. 2d 127, ¶33. The argument for revisiting the standard of governmental immunity has been made and, through amicus briefs, the court has heard from governmental entities and representatives of tort victims. There is no time like the present.

¶77 It is a fundamental principle of statutory construction to presume that the legislature's intent is expressed in the statutory language. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶44, 271 Wis. 2d 633,

---

[4] As Justice N. Patrick Crooks noted in his concurrence in Showers, the court "must do a better job of striking the balance between too much immunity, which creates a heavy burden for those who suffer harm from negligent government acts, and too much liability, which creates a heavy burden for taxpayers." Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶69, 350 Wis. 2d 509, 835 N.W.2d 226 (Crooks, J., concurring).

681 N.W.2d 110. Statutory interpretation begins with the language of the statute. Id., ¶45. "Statutory language is given its common, ordinary, and accepted meaning . . . ." Id. Where the "meaning of the statute is plain, we ordinarily stop the inquiry," and decline to consult extrinsic sources of interpretation. Id. (citations omitted).

¶78 We look then to the common, ordinary and accepted meaning of the words in Wis. Stat. § 893.80(4). The word "legislative" means "[o]f, relating to, or involving lawmaking or the power to enact laws; concerned with making laws." Legislative, Black's Law Dictionary 1039 (10th ed. 2014). The word "judicial" means "[o]f, relating to, or involving a judgment." Judicial, Black's Law Dictionary 974. The word "quasi" means "[s]eemingly but not actually; in some sense or degree; resembling; nearly." Quasi, Black's Law Dictionary 1439. A "function" refers to an "[a]ctivity that is appropriate to a particular business or profession." Function, Black's Law Dictionary 787. Taken together, § 893.80(4) provides governmental immunity only for agents or employees of a governmental entity who are engaged in an act that, in some sense or degree, resembles making laws or exercising judgments related to government business.

¶79 Applying the plain language of Wis. Stat. § 893.80(4) to the facts in this case, the New Berlin camp staff was provided with "Staff Guidelines" which set forth the relevant expectations of camp staff as follows: "[i]t is your responsibility to supervise the kids at all times. For example,

9

during weekly swimming field trips you are to actually watch the kids in the water by being in the water with them, or by sitting on the edge of the pool." The guidelines further provided: "[m]ake sure you know where the kids in your care are at all times," and, underlined for emphasis, that "[u]nder no circumstances should kids be left alone."

¶80 While the promulgation of these guidelines would qualify as a "quasi-legislative" activity of New Berlin, and thus New Berlin would receive immunity for legal challenges involving the content of those guidelines, New Berlin is not immune from suit for its camp staff negligently failing to supervise Lily in accordance with the guidelines. The guidelines provided clear instructions to camp staff to "know where the kids in your care are at all times" and "[u]nder no circumstances should kids be left alone." When the New Berlin camp staff failed to supervise Lily as required by the guidelines, they were not making any laws or exercising any judgments related to government business. They cannot be said to have acted in a quasi-legislative or quasi-judicial manner and therefore governmental immunity does not apply.

### III. CONCLUSION

¶81 In sum, although I agree with the majority opinion's conclusion that New Berlin is not immune from suit for the negligence of its camp staff, I cannot join the majority opinion because it expands the known danger exception beyond the "narrow, judicially-created exception" to confer immunity in this case. Instead, I return to the plain language of Wis.

10

Stat. § 893.80(4) and conclude that New Berlin is liable for Lily's drowning because the negligent supervision of Lily at the Aquatic Center on July 3, 2012 was not an act done in the exercise of a quasi-legislative or quasi-judicial function.

¶82 For the foregoing reasons, I concur.

¶83 I am authorized to state that Justices REBECCA GRASSL BRADLEY and DANIEL KELLY join this concurrence.

11