REBECCA FRANK DALLET, J. (dissenting).
¶72 The majority opinion continues to apply a framework *501 for governmental immunity that creates an artificial, impracticable distinction between a ministerial duty and discretionary act. I apply the plain language of Wis. Stat. § 893.80(4) to determine whether the Village of Stetsonville is entitled to governmental immunity on Alan Pinter's negligence claim. The majority opinion appears to adopt a requirement of expert testimony in every private nuisance claim arising out of negligent maintenance of a wastewater disposal system. I maintain that whether expert testimony is required is a fact-specific inquiry. Because I would reverse the court of appeals as to both of Pinter's claims and remand the cause to the circuit court for further proceedings, I respectfully dissent.
A. The Village is not entitled to governmental immunity.
¶73 This court in 1962 determined that because the doctrine of municipal governmental *560 immunity has judicial origins, this court can abrogate it. Holytz v. City of Milwaukee, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962). So this court did just that. We declared that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability-the exception is immunity." Id. An exception was created for immunity from tort for a governmental body in the exercise of its "legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40, 115 N.W.2d 618. The following year, the legislature codified this exception for governmental immunity by enacting Wis. Stat. § 893.80(4), which provides, in pertinent part, that "[n]o suit may be brought against any ... governmental subdivision or any agency thereof ... or against its officers, officials, agents or employees for acts done in *502 the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."[1]
¶74 Soon after the adoption of Wis. Stat. § 893.80(4), this court began to enlarge the limited exception to governmental immunity with a return to the pre- Holytz judicial classification of whether the government employee's act was "discretionary" or whether he or she was performing a "ministerial duty."[2] Legislative, quasi-legislative, judicial or quasi-judicial functions in § 893.80(4) has thus been interpreted by this court to be synonymous with the word "discretionary." See Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶ 25, 235 Wis. 2d 409, 611 N.W.2d 693. Although every act has some measure of discretion attached, governmental immunity has been granted for acts this court has labeled as "discretionary," but this court has afforded no immunity for liability associated with what it deems " 'the performance of ministerial duties imposed by law.' " See Legue v. City of Racine, 2014 WI 92, ¶ 42, 357 Wis. 2d 250, 849 N.W.2d 837 (quoting Brown v. Acuity, 2013 WI 60, ¶ 42, 348 Wis. 2d 603, 833 N.W.2d 96 ).
¶75 The determination that an act is discretionary so as to invoke immunity has appeared almost random at times.[3] The inconsistent jurisprudence resulting *503 from our engagement in this fiction demonstrates how untethered this court has become from the intent of governmental immunity: " 'to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place.' " Legue, 357 Wis. 2d 250, ¶ 40, 849 N.W.2d 837 (emphasis added; quoted source omitted).
¶76 In accordance with this framework, Pinter asserts that the Village is not entitled *561 to immunity because the protocol of when to use the portable pump to bypass the wastewater disposal system gave rise to a ministerial duty and left no room for the exercise of discretion. Rather than employ the judicial labels this court has layered over Wis. Stat. § 893.80(4), I would return to the plain text of § 893.80(4) and adhere to this court's stated purpose for the limited exception of governmental immunity. See Engelhardt v. City of New Berlin, 2019 WI 2, ¶ 75, 385 Wis. 2d 86, 921 N.W.2d 714 (Dallet, J., concurring) ("Returning to the text of § 893.80(4) would not only result in coherency in our jurisprudence, it would also allow redress to innocent victims for wrongs committed by the government."); see also Melchert v. Pro Electric Contractors, 2017 WI 30, ¶ 65, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting) ("Restoring an interpretation *504 of Wis. Stat. § 893.80(4) properly grounded in that section's text would bring coherence and predictability to our governmental immunity jurisprudence.").
¶77 Wisconsin Stat. § 893.80(4) provides that "[n]o suit may be brought against any ... governmental subdivision or any agency thereof ... or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." The common, ordinary, and accepted meaning of the words in § 893.80(4) afford governmental immunity only for agents or employees of a governmental entity who are engaged in an act that, in some sense or degree, resembles making laws or exercising judgments related to government business.[4]
¶78 When Village employees reacted to the high wastewater levels at the main lift station on September 10, 2014, they were not making any laws or exercising any judgments related to government business pursuant to Wis. Stat. § 893.80(4). Moreover, they were not making balanced policy decisions for wastewater management on behalf of the Village for which the protection of immunity was intended. They therefore cannot be said to have acted in a quasi-legislative or quasi-judicial manner. Treating the Village employees' actions in response to an emergency as legislative, quasi-legislative, judicial, or quasi-judicial functions protected by immunity is a distortion of the clear *505 statutory language of § 893.80(4) and the purpose of governmental immunity.
¶79 On the other hand, formal action by the Village Board to memorialize or adopt the protocol regarding the proper response to high wastewater levels could qualify as a quasi-legislative function of the Village. Had the Village's protocol been memorialized or adopted by the Village Board, followed by the Village employees on September 10, 2014, yet the backup still occurred, the Village would arguably have immunity against a claim for negligence because their employees acted in accordance with a policy adopted pursuant to a legislative or quasi-legislative function. However, in this case it is undisputed that the protocol was never mandated by the Village and, in any event, was not followed. The circuit court improperly granted summary judgment to the Village on the grounds that the Village *562 was immune from suit under Wis. Stat. § 893.80(4). Since Pinter's negligence claim is not barred by the doctrine of governmental immunity, the cause should be remanded to the circuit court for further proceedings on this claim.[5]
B. The evidence in the record and inferences from that evidence were sufficient to create a genuine issue of material fact on Pinter's private nuisance claim without the need for expert testimony.
¶80 The majority concludes that Pinter did not raise a genuine issue of material fact as to his private nuisance claim because he did not present expert *506 testimony. Majority op., ¶59. To the contrary, I conclude that the evidence in the record and inferences from that evidence were sufficient to create a genuine issue of material fact that the Village negligently maintained the wastewater disposal system causing a private nuisance, and that expert testimony was not required.
¶81 Whether the Village may be held liable for maintaining a nuisance in its operation of the wastewater disposal system depends upon whether there was underlying negligent conduct on the part of the Village "otherwise actionable under the rules governing liability for negligent ... conduct." Wisconsin Power & Light Co. v. Columbia Cty., 3 Wis. 2d 1, 11, 87 N.W.2d 279 (1958). To prove liability for negligent conduct, Pinter must therefore prove four elements: (1) the existence of a duty of care on the part of the Village; (2) a breach of that duty; (3) a causal connection between the breach of the duty of care and Pinter's injury; and (4) actual damages resulting from the breach.
¶82 The disputed issues in this case are whether the Village negligently maintained the wastewater disposal system and whether that negligence caused the wastewater to back up into Pinter's basement. The Village argues, and the majority opinion agrees, that Pinter did not present the requisite expert testimony to prove it was negligent in maintaining the wastewater disposal system. However, the majority fails to recognize that "[t]he requirement of expert testimony is an extraordinary one." White v. Leeder, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989).
¶83 In reaching its conclusion that expert testimony is required, the majority opinion adopts the court of appeals' characterization of the Menick case *507 and thus appears to adopt the proposition that an expert witness is required as a matter of law to prove a claim for private nuisance arising out of negligent maintenance of a wastewater disposal system.[6] Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App 1996). However, Menick does not stand for this proposition. In Menick, the court of appeals relied upon not only Menick's "fail[ure] to provide any expert testimony" in affirming summary judgment, but also Menick's failure "to *563 advance any theory of liability supported by specific allegations of negligent actions on the part of the City." Id., at 748, 547 N.W.2d 778. Unlike in this case, the plaintiff in Menick proceeded only on a theory of strict liability and there was another potential cause of the sewage backup unrelated to the actions of the City, unprecedented rainfall. Rather than create a bright line rule, Menick supports the conclusion that whether an expert is required to prove causation in a private nuisance claim arising out of negligent maintenance of a wastewater disposal system is fact-specific.
¶84 The majority opinion gives short shrift to the evidence that Pinter presents. Pinter identifies three ways in which the storm water allegedly infiltrated the closed wastewater disposal system: (1) leaky pipes; (2) sump pumps directly pumping into *508 the wastewater disposal system; and (3) drain tiles improperly connected to the wastewater disposal system. Pinter relies upon the testimony of David Duellman, the Director of Public Works for the Village, who testified that the wastewater disposal system is supposed to be a closed system from storm water but that water still infiltrates the system. Duellman testified that there is an eight-inch wastewater treatment line that goes up to the hill north of town and that "we believe that's where a lot of the infiltration is coming from." He further testified that sump pumps are draining into the wastewater disposal system and that some of the older homes have drain tiles that might accumulate into the wastewater disposal system. Duellman admitted that they watched the rains carefully. Moreover, Pinter testified that on October 1, 2014, when he asked why the water comes into his basement, Duellman told him that "they have some broken pipes on the north end that the water filters in from the ditch line" and that the Village did not have the over one hundred thousand dollars needed to fix them.
¶85 Pinter also presented the testimony of the Village President, Gregory Brunner, who testified that the wastewater disposal system had a problem with storm water infiltration if there was "heavy rain." Pinter also points to concessions by Brunner that: (1) the Village had not enforced its own ordinance that made it illegal to connect a sump pump into the wastewater disposal system; (2) sometime after September 10, 2014, the Village created an inspection schedule to address this issue; and (3) in October 2014, the Village Board of Trustees created a formal policy which called for pumping when the wastewater reached the fourth rung, no questions asked, and that no backups have occurred in Pinter's basement since *509 then. Pinter asserts that the testimony and common sense prove that causation in this case was uncontroverted as a matter of law or, at a minimum, raise a genuine issue of material fact.
¶86 I agree with Pinter that the inferences drawn from the testimony of the Village employees taken in the light most favorable to Pinter, the standard the majority opinion fails to acknowledge, provides a genuine issue of material fact as to whether the Village negligently maintained its wastewater disposal system and whether this negligence was a substantial factor in the wastewater backup into Pinter's basement.[7] This issue is not nuanced and complex, as the majority opinion asserts.
*564 Instead, water infiltration, wastewater disposal system overflows, seepage of wastewater into homes, and related issues are all within the capability of jurors to understand and do not require any specialized knowledge or experience. Pinter's witnesses described personal experiences with and observations of the infiltration of storm water into the closed wastewater disposal system through leaky pipes and improperly connected sump pumps and drain tiles. In addition, these witnesses reported a connection between storm water infiltration and the rising wastewater levels. This testimony, along with the application of common sense, allows the trier of fact to draw its own conclusions without the need for expert testimony. See Tews v. NHI, LLC, 2010 WI 137, ¶ 42, 330 Wis. 2d 389, 793 N.W.2d 860 (reasoning that *510 " '[o]n summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact' ") (quoted source omitted).[8]
¶87 Accordingly, I would reverse the court of appeals as to both of Pinter's claims and remand the cause to the circuit court for further proceedings.
¶88 For the foregoing reasons, I respectfully dissent.
¶89 I am authorized to state that Justices REBECCA GRASSL BRADLEY and DANIEL KELLY join this dissent.

The statute was originally enacted as Wis. Stat. § 331.43.

A ministerial duty has been defined as one that is " 'absolute, certain and imperative ... and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶ 25, 253 Wis. 2d 323, 646 N. W. 2d 314 (quoting Lister v. Board of Regents of Univ. of Wis. Sys., 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976) ).

See, e.g., Lodl, 253 Wis. 2d 323, ¶ 31, 646 N.W.2d 314 (holding that although the statute at issue described the procedures the officer should use in deciding to manually control traffic, the officer had discretion as to when to perform manual traffic control); Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶ 29, 262 Wis. 2d 127, 663 N.W.2d 715 (holding that a guidance counselor's act of wrongly advising a student that his classes were approved by the NCAA was discretionary, despite the guidance counselor's receipt of clear and unambiguous forms detailing approved and unapproved NCAA courses); Brown v. Acuity, 2013 WI 60, ¶ 59, 348 Wis. 2d 603, 833 N.W.2d 96 (holding that a firefighter was liable for running through a red stop signal with his emergency lights activated, but without an audible signal, because he violated a clear ministerial duty).

The word "legislative" means "[o]f, relating to, or involving lawmaking or the power to enact laws; concerned with making laws." Legislative, Black's Law Dictionary 1039 (10th ed. 2014). The word "judicial" means "[o]f, relating to, or involving a judgment." Judicial, Black's Law Dictionary 974. The word "quasi" means "[s]eemingly but not actually; in some sense or degree; resembling; nearly." Quasi, Black's Law Dictionary 1439. A "function" refers to an "[a]ctivity that is appropriate to a particular business or profession." Function, Black's Law Dictionary 787.

I further conclude that the Village is not entitled to governmental immunity on Pinter's private nuisance claim, which the majority opinion assumes without deciding. See majority op., ¶59.

The court of appeals concluded that according to Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App 1996), Pinter needed to present expert evidence demonstrating:
(1) that water from outside sources in fact infiltrates the wastewater disposal system; (2) when the water infiltrated the system and in what amount; (3) whether that amount of infiltration was unreasonable, given the size of the system; and (4) whether the infiltration contributed to the backup in Pinter's basement.
Pinter v. Village of Stetsonville, No. 2017AP1593, unpublished slip op., ¶ 42, 382 Wis. 2d 272, 2018 WL 1740347 (Wis. Ct. App. Apr. 10, 2018).

Pursuant to Wis. Stat. § 907.02, experience may qualify someone as an "expert": "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." Pinter never raised the issue of whether Duellman's experience qualified him to testify as an expert, and therefore I will not address it.

While I would not require an expert in this case, it does "not close the door to the possibility that expert testimony may later assist the trier of fact." Racine Cty. v. Oracular Milwaukee, Inc., 2010 WI 25, ¶ 35, 323 Wis. 2d 682, 781 N.W.2d 88.